385 So.2d 319 (1980)
Coley DAVIDSON
v.
NEW ROADS MOTOR COMPANY, INC. and Ford Motor Company.
No. 13176.
Court of Appeal of Louisiana, First Circuit.
March 31, 1980.
Rehearing Denied June 9, 1980.
*320 Andre C. Broussard, Hebert & Moss, Baton Rouge, for plaintiff-appellant.
A. S. Easterly, III, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-appellee-Ford Motor Co.
Paul Marks, Jr., Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, for defendant-appellee-New Roads Motor Co.
Before ELLIS, CHIASSON and PONDER, JJ.
PONDER, Judge.
Plaintiff appealed the judgment granting a reduction in price but denying rescission of the sale in this redhibition action.
The issues are the correctness of the granting of quanti minoris but denying rescission; and the attorney's fees.
*321 We amend the judgment to allow a rescission of the sale and to increase the attorney's fees and then affirm.
Plaintiff purchased a Lincoln Continental Mark V for a cost in excess of $16,000.00. From the beginning there were problems with the car: the paint was "bubbled" in places, the rocker panel was damaged, rain water collected on the interior floor, the garnish molding was loose, the outside rearview mirror was loose, there was no light under the hood, an armrest was torn, and the hood was not properly aligned. Shortly after the sale, squeaks, rattles and vibrations developed. A spring in the driver's seat broke and the seat motor did not operate properly. Plaintiff noticed that the upholstery was not tacked down and there were loose wires hanging under the dash.
Even more serious problems began to manifest themselves. The car began to overheat just three months after purchase and it was difficult to keep water in it. There was one instance when oil mixed with antifreeze came out of the dipstick hole. The pulley on the power steering sheared off. The E.G.R. plate was leaking. The engine would not start for two months. The ignition module and the intake manifold were changed. The power steering and brakes needed adjustment. The transmission was noisy. Plaintiff testified that the drive shaft felt loose. The emergency brake would not release and a window had to be pulled up manually.
Plaintiff brought his car back to the dealer approximately seven times in the first eleven months. The number is uncertain because on several occasions no ticket was written by the service department and on other occasions the tickets were "lost" by the dealer. Plaintiff also brought his car to two dealers in Baton Rouge for repairs. He had to have it towed three times, twice in the first year he owned it and a third time in three more months.
Plaintiff called the Ford Motor Company in Michigan twice and in New Orleans twice seeking help. He testified he received no relief.
Plaintiff continues to have difficulties with the car. Water still collects inside the car when it rains, the paint has not been repaired, and neither the seat motor nor the front window operate properly.
Civil Code Article 2520 states:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Cangelosi v. McInnis Peterson Chevrolet, Inc., 373 So.2d 1346 (1st Cir. 1979) and Perrin v. Read Imports, Inc., 359 So.2d 738 (4th Cir. 1978).
Latent defects appearing well after the sale can be a basis for redhibition if they are not the normal result of ordinary use. Moreno's Inc. v. Lake Charles Catholic H.S., Inc., 315 So.2d 660 (La.1975) and Perrin, supra.
Plaintiff purchased a luxury car for which he paid a considerable sum of money. It was a car he dreamed of owning for years and he understandably had high expectations of its performance. The manufacturer and the dealer contributed to these expectations.
Defendants did not refute the testimony of plaintiff and his witnesses as to the existence of the problems. They offered no alternative explanation for the defects nor did they deny the many attempts of plaintiff to resolve the problems. There was no proof that plaintiff abused the vehicle.
Defendants argue that plaintiff did not tender the car for repairs, because, after eighteen months of frustrations, he refused to allow defendants to try to remedy the situation and instead decided to file suit. Defendants' position is untenable. The plaintiff had been complaining of the water in the car since the first month of purchase. The dealer had full knowledge of all plaintiff's complaints. Plaintiff tendered the car *322 for repairs over seven times to defendant dealer and two Baton Rouge dealers.
Plaintiff has shown a pattern of defects in the vehicle which rendered its use inconvenient and imperfect. He stated that he would not have purchased it had he known of the defects. We feel that a reduction in price would not adequately compensate plaintiff. While some of the defects were minor and some had been repaired, there were significant major defects which were never remedied. The accumulation of all the vices complained of convinces this court that plaintiff is entitled to a total rescission of the sale.
The invoice admitted into evidence shows that the cash price of the vehicle was $12,600.00 to which were added the amounts of $9.80 for title and license, $378.00 for state tax, $378.00 for parish tax, $566.98 for credit life insurance and $2,741.62 for finance charge, making a total of $16,674.40.
Plaintiff testified to and submitted bills for $31.70, $132.72, and $225.40 for repairs paid to others than the dealer and for $13.78 and $16.81 for car rental. We believe he is entitled to recover for these.
Admittedly, plaintiff had driven the car about 16,000 miles at the time of trial. We think defendant should be allowed a credit of $2,400.00. In addition, there will be credits arising from the cancellation of the credit life insurance and the prepayment of the balance of the note. The defendants should be given these credits.
Therefore, we grant plaintiff $14,694.81 less the amounts resulting from the cancellation of the credit life insurance and the prepayment of the loan.
Plaintiff has requested attorney fees of $4,300.00 for the trial and the appeal. We award plaintiff $3,000.00 in attorney fees for the trial and $500.00 attorney fees for the appeal for a total of $3,500.00 attorney fees against Ford Motor Company.
New Roads Motor Company, Inc. by third party demand requested indemnity against Ford Motor Company for any and all sums owed by it to plaintiff as well as for $2,043.00 in attorney fees. We grant New Roads Motors complete legal indemnity against Ford Motor Company and we grant New Roads Motors $1,500.00 in attorney fees.
We therefore amend the judgment of the trial court. We grant judgment in favor of the plaintiff and against the defendants ordering the rescission of the sale; we further grant judgment in favor of the plaintiff and against the defendants in solido in the amount of $14,694.81 plus legal interest from the date of judicial demand; less the credit received from the cancellation of the credit life insurance and the prepayment of the loan; we grant judgment in favor of plaintiff and against Ford Motor Company in the amount of $3,500.00 as attorney fees. We also grant judgment in favor of third party plaintiff New Roads Motor Company, Inc., against third party defendant Ford Motor Company for complete legal indemnity for any sum it may owe to plaintiff as a result of this litigation and also for $1,500.00 in attorney fees.
All costs at both the trial level and on appeal are assessed to defendant Ford Motor Company.
AMENDED AND AS AMENDED AFFIRMED.