478 So.2d 1346 (1985)
Glory Allen Ledford, Wife of/and Hugh R. ANDERSON, Jr.
v.
VISA, LTD., 20th Century Homes, Inc. and Charles Ray Eaton.
No. 85-CA-315.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1985.
*1347 Jennifer N. Willis, Michael Florio, New Orleans, for plaintiffs-appellees.
Michael J. Moran, Rebecca B. Mache, Metairie, for defendant-appellant.
Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal by Visa, Ltd. (now 20th Century Homes, Inc.), defendant-appellant, from a judgment in quanti minoris in favor of Hugh Anderson and his wife Glory Ledford, plaintiffs-appellees. The allegations which plaintiffs sought to prove at trial were that a new house which they purchased from the builder, Visa, had not been completed as per contract, and was built on a defective foundation. After trial on the merits, the trial court awarded plaintiffs $2,000 as costs for completing the house according to the contract. This award is not contested here. He also found that the foundation was defective and awarded $15,000 to correct that condition. *1348 Finally, he awarded $5,000 in attorney fees pursuant to La.Civ.Code art. 2545, noting that a builder of a home is presumed to know of its vices.
Because our review of the record discloses neither manifest factual error, nor prejudicial procedural error, we affirm.
The pertinent facts are these. In July, 1980, the Andersons bought a new house from Visa, the builder. They moved into the house before it was completed, but with the understanding that all work was to be finished by the builder. When a disagreement arose between the parties over whether completion of certain work was the responsibility of Visa, the Andersons filed suit for a reduction of the purchase price for defects in the house. The original petition was filed in July, 1981, and an amended petition followed in May, 1982. Attached to this amended petition was a list of defects which included cracks in the sheetrock and in the exterior brickwork. During June through August, 1982, a sixfoot deep below ground swimming pool was built in the back yard of the house.
Duane Crump, an architect and expert for the plaintiffs, examined the house in January of 1983. During that examination he determined that the slab of the house was settling unevenly. This was the first indication to the plaintiffs that some defect in the slab may have been responsible for problems in the structure of the house. In February, 1984, a survey conducted by R.L. Schumann showed conclusively that the slab had settled some two inches more in the center than at the edges.
Trial of the matter was held on April 23-24, and on August 27-29, 1984. During the April phase of the trial, George Schrenk, plaintiffs' expert on foundation design, testified. His opinion then as to the probable cause of the settling was that the fill dirt placed on the lot had not been allowed to sit on the site for a long enough time before the piles were driven. His technical term for what he thought was happening was "down drag". This occurs, he explained, because the weight of fill dirt gradually compresses the underlying soil. Thus, if pilings are driven before this compression is substantially completed, they get drawn downward along with the underlying soil as it continues to be compressed by the weight of the fill. He further stated that the greatest compression occurs in the center of the filled site, and he found this compatable with the two inch differential between the elevations at the edges, and those at the center of the house.
Although the briefs of the parties in this court do not explain the four month hiatus in this trial, it is apparent from the record that the delay was occasioned by third party demands made by Visa. Specifically, on March 30, 1984, less than four weeks before trial was to begin, and almost three years after the original suit was filed, Visa made Royce Waters and the City of Kenner third party defendants. The allegations against these parties were that Waters, Kenner's City engineer when the house was being built, had incorrectly redesigned the piling plan of the house before giving city approval for its construction, and this improper plan was the cause of the house settling. Waters requested and was granted a 30 day extension of time within which to answer this demand, on April 24, 1984. It is evident, therefore, that the trial could not proceed further until the third party defendants had answered and completed discovery.
During the break in the trial, new discoveries by all parties led to revision of both the Andersons' and Visa's theories of the cause of the settlement. First, Visa's soil and foundation expert, Berkley Taughber, discovered in a May test, that the water table at the site was only some 18 inches below the surface, rather than five feet as he previously believed. The 18 inch figure was confirmed by additional tests of August 7th and August 23rd. Second, Waters, in the company of plaintiffs' expert, excavated four pilings on the site on August 10th and discovered that there was a gap of some two inches between the slab and the top of these pilings.
When trial resumed on August 27th, Visa dismissed Waters and the City of Kenner as third party defendants, and Waters *1349 subsequently testified as a fact witness for the Andersons. The substance of his testimony as indicated above was that when the four pilings were excavated, they were not in contact with the slab, and they had sand on their tops. Irving Bergeron, a neighbor of the Andersons, testified that he watched the slab being poured. He stated that on the day before the pouring, the tops of the pilings were protruding above the fill dirt, but that a rainstorm during the night had washed the fill dirt over the tops of the pilings. He further testified that the cement was simply poured over the fill dirt without first removing the covering dirt to re-expose the tops of the pilings.
All of the experts in the case agreed that if the slab was poured in the manner described by Bergeron, it would be improper construction and settling would occur. Based on this new information, George Scherenk, plaintiffs' expert, changed his opinion as to the main cause of the settling. While he still thought that "down drag" may have played some part in the problem, he was convinced that the failure of the pilings to penetrate up into the concrete slab was the major factor.
Defendant's expert, Berkley Taughber, also admitted that sand on the pilings would cause settling. However, he was not persuaded that that was the problem here. He based that opinion on the fact that pilings are not all driven to the same depth, and if the slab were settling down to the pilings, there would be an erratic settling rather than the somewhat uniform settlement in the center of the house as shown by the survey. His explanation for the problem was, instead, that it was caused by the swimming pool excavation. He admitted that when he first examined the house, he ascribed the settlement to "down drag" on the pilings, rather than the pool excavation. He had reached this initial conclusion on the assumption of a water table five feet below the surface. However, on learning in May, 1984, after the first phase of the trial, that the table was only 18 inches below ground, he revised his opinion. He explained that when water is removed from the ground, the pilings loose their bouyancy and thus greater pressure is exerted on that portion of the piling below the lowered water table. Since the excavation for the pool would have been about seven feet deep, not enough water would have been removed from the surrounding soil by pumping out the hole to affect the pilings with a five foot water table. However, with an 18 inch water table, the pumping would have drained some five feet of water from under the house and the pilings would have in effect "slipped" down because of the reduced weight bearing capacity. He further stated that this slipping would have occurred in a matter of minutes when the weight on the pile exceeded its carrying capacity. He admitted on cross examination that he had no knowledge of cracks in the house prior to the summer of 1982, and had not considered that in his opinion. Schrenk, on the other hand, thought that not enough water could have been drained from the soil beneath the house to create this effect in the short time that the pool was excavated, and considering that the hole was some 20 feet from the house.
Given Taughber's opinion that slippage of the pilings would have occurred very rapidly because of pumping the pool excavation, a crucial issue in the case was whether or not cracks had appeared in the house due to settling before the pool was built. On this point, both Andersons testified that interior and exterior cracks had appeared within six months of the purchase date. They also stated that doors in the house were sticking before the pool construction, a further indication of uneven settling. Also, as noted above, a list of problems attached to their amended petition of May, 1982, mentioned cracks in both the sheetrock and the exterior brick work.
On the issue of how the problem with the slab might be corrected, George Aldrete, a shoring expert, was called by the plaintiffs. His testimony was that he had taken elevations at several points and determined that the slab was not level, especially in the center. His estimate for the cost of shoring and re-leveling the house was $15,000. This estimate was not refuted by the defendants. Schrenk was also questioned on *1350 what would happen to the slab where it was not resting on the pilings. His response was that it would eventually have to move down to the pilings before it stopped settling. Taughber, on the other hand, thought that a shoring operation would only add more weight to the house and worsen the potential "down drag" problem which he never ruled out as at least partially responsible for the settling. He also noted that the elevation surveys showed that no appreciable settlement had occurred from February 1984 to the final days of the trial in August, and thus concluded that the slab had stabilized.
On the basis of this testimony and evidence the trial court found that the cause of the settling was the fill dirt which had washed over the pilings and which was not removed prior to pouring the slab. He further found that it would cost $15,000 to correct the problem by leveling the house and reworking the foundation so that the slab would rest on the pilings as originally intended. Because he found that the defect existed at the time of sale, and that the builder was presumed to know of this defect, he awarded attorney fees to the plaintiffs.
Visa now appeals alleging three basic grounds for reversal:
1. The trial court improperly permitted Waters and Bergeron to testify and Schrenck to be recalled, at the August portion of the trial, and further, prejudiced their defense by not granting a continuance to prepare rebuttal to new evidence to be presented by these witnesses;
2. It was manifest error to credit the testimony of plaintiffs' experts while discounting that of defendant's experts as to the cause of the settling; and
3. It was manifest error to find that shoring was necessary to correct the defect.
In regard to Bergeron's appearance, we need only point out that no objection was made at trial to his testifying, and therefore any such objection was waived, La. Code Civ.Pro. art. 1634; cf. Thibodeaux v. Western Worlds Ins. Co., 391 So.2d 24 (La.App. 3rd Cir.1980).
As to Waters and the recalling of Schrenk, Visa urges that it was prejudiced by surprise. The substance of this allegation is that counsel for Visa was not informed of the results of the August 10, 1984, excavation performed by then third party defendant Waters until the morning of August 27th, and thus they could not prepare an adequate defense. It further urges that the plaintiffs failed to supplement requests for discovery in not informing Visa of the results of Waters' excavations, and that those results should thus have been excluded by the trial court on this ground as well, pursuant to La.Code Civ.Pro. art. 1428. We disagree on both points.
A trial judge is vested with broad discretion in conducting trials in a manner which he determines will be conducive to justice, La.Code Civ.Pro. art. 1631. Similarly, reasonable questions as to the admissability of evidence should be resolved in favor of receiving such evidence, Coignet v. Deubert, 413 So.2d 253 (La.App. 4th Cir.1982). Further, where a party seeks to exclude evidence on the grounds of surprise, the court may grant a "constructive continuance" by delaying the presentation of the questioned evidence until later in the trial to give the complaining party time to prepare rebuttal evidence, and thus avoid prejudice from surprise, cf. Fontenot v. Fontenot, 427 So.2d 27 (La.App. 3rd Cir. 1983).
In the present suit, the trial court's actions were fully in accord with these principles of law. First, there can be no question but that the results of Waters' excavations of the pilings were crucial to a just resolution of the case, particularly in light of Bergeron's testimony as to how the slab was poured. Second, Visa's argument that the substance of Waters' testimony was subject to continuing discovery presents a reasonable question of admissability to be resolved in favor of receiving that evidence. Waters testified that he went to the site with his attorney, his own expert consultant, and a work crew. The *1351 record establishes conclusively that on the day of the excavations he was still a third party defendant. Additionally, Visa had by its own motion gotten an extension of the cut off date for discovery until August 15th, and never propounded interrogatories to Waters. It is certainly not clear to this court that a plaintiff is required by the rules of continuing discovery to make known to an original defendant evidence of which he has knowledge but which has been developed timely by a third party defendant to rebut the third party claim. Additionally, this was directly discoverable by Visa from the third party defendant whom he has impleaded, but no such discovery was ever attempted by means of interrogatories or otherwise.
Moreover, even were such evidence initially inadmissable on the grounds of prejudicial surprise, this objection was cured by the granting of a constructive continuance. The trial court delayed presentation of Schrenk's expert opinion as to the significance of Waters' factual discovery of the gap between the slab and the pilings for one day to provide Visa time to consult with its expert as to his opinion of this discovery. A careful review of Traughber's testimony does not indicate that he needed more time to review Waters' findings or Schrenck's opinion of those findings in order to rebut them, and we find no other support in the record for Visa's contention find no other support in the record for Visa's contention that it was prejudiced by this "surprise" evidence.
The next two issues raised by Visa we take up together because they involve related factual determinations. Visa asserts that the trial court committed manifest error in crediting the testimony of Schrenk over that of Traughber in finding that the slab was settling because of fill dirt on top of the pilings and that shoring would correct this problem. Our review of the record discloses no such errors. Both experts were in general agreement as to the dynamics of foundation and piling settlement. Both gave cogent explanations for their opinions as to why this house had developed problems. Both felt that the "down drag" effect was at least minimally at work on the foundation, but did not finally conclude that this was the major problem. Their disagreement was on the effects of the swimming pool excavation versus the consequences of fill dirt washing over the pilings before the slab was poured. However, the deciding factors in this disagreement, as the trial court recognized, were not the opinions of the experts, but rather when the cracks in the house first manifested themselves, and the credibility of Bergeron as to how the slab was poured. Traughber's theory was that the pilings would have failed within minutes of reaching their load bearing capacity in the summer of 1982, when the pool was excavated. Thus, the cracks resulting from uneven slab settlement would not have developed until after that time. Schrenk's theory on the other hand, would have produced a gradual settling with consequent cracking before the pool excavation, and continuing cracking afterwards, until the slab settled to the pilings, and since gaps were found between the pilings and the slab, it is evident that shoring was necessary to stop further settlement.
Both of the Andersons testified that interior and exterior cracks had developed before the pool was built, and we find nothing erroneous in the trial court crediting this testimony, especially where mention of these cracks was made in the attachment to the May, 1982, amended pleading, when the significance of those cracks was not known to any of the parties. Bergeron's testimony was also credible and consistent, and corroborated by Waters' excavation which showed fill dirt between the tops of the pilings and the slab. Finally, Traughber admitted on cross examination that he had not been informed of any pre-pool cracks in the house, and did not consider that fact in forming his opinion. On this showing there was no manifest error in the trial court's conclusion that it was more probable than not that the cause of the settling was improper pouring of the slab on fill dirt which had washed over the tops of the pilings. Similarly, it was not error to accept Schrenck's opinion that the slab would continue to settle until it reached the pilings, which it obviously had not done, *1352 and that consequently shoring was necessary to stop this settling as well as to level the house.
The final matter before us is whether the Andersons are entitled to attorney fees. Clearly, they are. Because the court found that the defect existed at the time of sale and because the builder is presumed to know of the defects in a house built by him, attorney fees were properly awarded, La.Civ. Code art. 2545; Saad v. Anderson, 416 So.2d 188 (La.App. 1st Cir. 1982). However, plaintiffs' request for additional fees for work at the appellate level must be denied. They neither appealed from the judgment nor answered the appeal of the defendant, but rather requested additional fees in brief to this court. In this circumstance we cannot grant additional fees, La.Code Civ. Pro. art. 2133; Celestin v. Fireman's Fund Ins. Co., 430 So.2d 1263 (La.App. 1st Cir.1983).
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.