527 So.2d 498 (1988)
NU-LITE ELECTRICAL WHOLESALERS, INC.
v.
COLONIAL ELECTRIC, Shamrock Construction Company, Inc., and Fidelity and Deposit Company of Maryland.
No. 88-CA-39.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1988.
Arthur J. Lentini, Hall, Lentini, Mouledoux & Wimberly, Metairie, for defendants-appellants.
Henry F. Mestayer, Satterlee, Mestayer & Freeman, New Orleans, for plaintiff-appellee.
Before CHEHARDY, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
This appeal relates to a suit by a materialman against the general contractor and its surety. From a judgment in favor of the plaintiff, defendants appeal. We affirm.
The basic record facts and procedural history are well-known to all parties and need not be repeated.
We are called upon to decide two basic questions:
(1) Whether the trial court was "clearly wrong" in finding that the materials (represented by the invoices) for which it rendered judgment became "component parts of the immovable" or were "consumed at the site of the immovable" as provided by La.R.S. 9:4802(A)(3) and
(2) Whether the trial court erred in permitting the plaintiff to introduce exhibits P-18 through P-23 into evidence when defendants asked plaintiff in Interrogatory Number 3 to list or attach to plaintiff's Answers all documentary evidence plaintiff planned to use as exhibits at trial, and plaintiff failed to include those six invoices in its Answer.
*499 ISSUE ONE
In addressing the initial issue, we note La.R.S. 9:4802, in pertinent part, states:
A. The following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract:
. . . .
(3) Sellers, for the price of movables sold to the contractor, or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.
Our jurisprudence provides that lien statutes are stricti juris in Louisiana, and plaintiff most prove its claim by a substantial preponderance of the evidence. Parish Concrete, Inc. v. Fritz Culver Inc., 399 So.2d 694, 696 (La.App. 1st Cir.1981); Best Elec. Supply Co. v. Rittiner, 334 So.2d 792, 794 (La.App. 4th Cir. 1976); Security Homestead Ass'n v. Schnell, 232 So.2d 898, 900 (La.App. 4th Cir.1970), writ denied, 256 La. 263, 236 So.2d 35 (La.1970). Additionally, our courts have stated that the ultimate proof required under La.R.S. 9:4802 is whether the materials became component parts of the immovable or were consumed at the site of the immovable. Proof of delivery to the job site shifts the burden of proof to the defendant to prove that the materials were not used in the construction or incorporated into the job. See Reily Bros. v. Dicon, Inc., 354 So.2d 651, 653 (La.App. 1st Cir.1977); Jahncke Serv. v. Foret, 139 So. 2d 554, 557 (La.App. 4th Cir.1962).
From our review of the record, we find the plaintiff sought to prove incorporation of the materials by having Moran inspect the building after suit was filed, hence, after the second electrical subcontractor had already completed the job. The only other witness called by plaintiff to verify the incorporation of the materials, who had personally inspected the building, was Mr. Schwab. He stated he had only visited the job site three to four times, two years before the trial began, and admitted under cross-examination that he had no way of knowing whether the fixtures were operational at the time of his last inspection because the bulbs and lamps were not installed then (after he had already said he believed the fixtures were working at the time Colonial stopped working there). Nicholas Rogers did give useful information regarding the paperwork involved in this case, but his inspection of the building itself was limited to what is depicted in the four photographs comprising plaintiff's exhibit P-24. Hogan's testimony regarding the degree of completion of Highlands II discredits the testimony of Moran and Schwab on that matter, and, as stated above, Moran's testimony discredits itself because he admitted his inspection took place after suit was filed, therefore, long after the second subcontractor had completed the job Colonial began.
On the other hand, when we view the testimony of Mr. Hogan we see no evidence, other than his rough "guesstimate," to prove the quantum or cost of any materials incorporated into the building that were not supplied by Nu-Lite and supposedly supplied by the second electrical subcontractor. The record, in fact, shows no documentary evidence was presented to support Mr. Hogan's self-serving and vague testimony. Upon reviewing the matter in toto, we cannot say the trial judge was clearly wrong. See Allen B. Cambre Lumber and Supply Co. v. Loomis, 94 So.2d 908, 909-10 (La.App.1957); Jahncke Serv. v. King, 157 So. 165, 166 (La.App. 1934); Haynesville Lumber Co. v. Casey, 165 La. 1065, 116 So. 559, 560 (1928); and Consolidated Eng'r Co. v. Town of Crowley, 105 La. 615, 30 So. 222, 230 (1901).
ISSUE TWO
Regarding the second issue, the record shows the plaintiff failed to indicate those six invoices in its Answer, but they were attached to the petition and formed part of the original record, and were made available in response to defendants' request for production of documents.
La.C.C.P. art. 1428 provides as follows:

*500 A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which he knows that the response was incorrect when made, or he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.
Under this article, plaintiff had a duty to amend its Answer to defendants' Interrogatory Number 3 when it decided to introduce plaintiff's exhibits P-18 through P-23 into evidence. However, in such situations the defendant has the opportunity to object to such exhibits being introduced into evidence. The trial court can then hear the arguments from both sides and determine under all the facts and circumstances whether the plaintiff's failure to supplement its answer so prejudiced the defendant that the evidence should not be received. Trial courts are given great discretion in deciding these matters. See Belk v. Montgomery Ward and Co., 501 So.2d 1008, 1013-14 (La.App.2d Cir.1987); Coignet v. Deubert, 413 So.2d 253, 255-56 (La. App. 4th Cir.1982); Giroir v. Pann's of Houma, Inc., 341 So.2d 1346, 1348 (La. App. 1st Cir.1976); Welch v. Campbell, Inc., 316 So.2d 822, 826 (La.App. 1st Cir.), writ denied, 321 So.2d 523 (La.1975); Maduel v. Mousseau, 28 La.Ann. 691 (1876); Wade v. C.W. Newton & Co., 14 La.Ann. 271 (1859); Knight v. Murchison, 1 Rob. 31 (1841); and Dean v. Hubbard, 1 Mart. (N.S.) 566 (W.D.1823).
Since the defendants had access to the invoices introduced as plaintiff's exhibits P-18 through P-23, and recognizing the wide discretion accorded the trial court in these matters, we find the trial court did not err in permitting the plaintiff to introduce these invoices.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellants.
AFFIRMED.