632 So.2d 1170 (1994)
Kenneth POCHÉ and Scott Key
v.
BAYLINER MARINE CORPORATION and Wagner Marine, Inc.
No. 93-CA-721.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1994.
*1172 Robert C. Lehman, Mandeville, for plaintiffs/appellees.
Wade A. Langlois, Daniel A. Ranson, Harvey, for defendants/appellants.
Before KLIEBERT, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
Plaintiffs, Kenneth Poché and Scott Key, filed this action seeking recision of the sale of a recreational watercraft. Defendants are Bayliner Marine Corporation (Bayliner), the manufacturer, and Wagner Marine, Inc. (Wagner), the retailer, of the boat in question, a Bayliner Trophy Convertible 2560. Defendant, Bayliner, answered with a general denial. Wagner answered and filed a cross-claim against Bayliner for full indemnification or, alternatively, contribution, in the event judgment is rendered against Wagner.
After a trial on the merits the trial court rendered judgment, supported by extensive, well written reasons for judgment, on October 14, 1992 in favor of plaintiffs and against Bayliner, rescinding the sale of the boat and awarding damages in the amount of the full purchase price of $46,799.91. Further, the trial court awarded $14,433.04 in damages for various expenses incurred by plaintiffs resulting from their ownership in the vessel, $20,000.00 in consequential damages for inconvenience, aggravation, and loss of use, $20,000.00 for attorney's fees, and $1,000.00 per expert in expert fees. The judgment dismissed other claims made by plaintiffs.
Wagner filed a timely motion for new trial, or in the alternative, an amended judgment seeking a judgment on its cross-claim against Bayliner for all attorney's fees and costs. Bayliner also filed a timely motion for new trial. The court denied Bayliner's motion. However, on February 4, 1993 the trial court amended the October 14, 1992 judgment to award Wagner $5,555.33 in attorney's fees. Bayliner filed this appeal on both the October 14, 1992 judgment and the February 4, 1993 amended judgment. On appeal, Bayliner assigns seven errors:
1. The trial court was manifestly erroneous in finding that the plaintiffs carried their burden of proving a vice or defect in the boat which rendered it either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the plaintiffs would not have purchased it.
2. Alternatively, the trial court was manifestly erroneous and committed an error of law in awarding expenses occasioned by the sale or incurred for the preservation of the thing sold.
3. Alternatively, the trial court was manifestly erroneous in finding plaintiffs entitled to nonpecuniary damages for inconvenience, aggravation and loss of use, and/or the amount of nonpecuniary damages awarded are excessive.
4. Alternatively, the trial court was manifestly erroneous in awarding plaintiffs $20,000.00 as reasonable attorney's fees.
5. Alternatively, the trial court was manifestly erroneous and committed error of law in awarding interest from the date of the purchase on the purchase price of the vessel.
6. Alternatively, the trial court was manifestly erroneous and committed error of law in awarding interest from date of demand on all attorneys and expert fees.
7. Alternatively, the trial court was manifestly erroneous and committed error of *1173 law in awarding attorney's fees to Wagner Marine, Inc. on its cross-claim for indemnification against Bayliner when Wagner was dismissed from this case.
Evidence introduced at trial shows that on April 29, 1988, Kenneth Poché and Scott Key, both avid sport fishermen, purchased the vessel in question from Wagner Marine. The men wanted to purchase a boat for offshore fishing and scuba diving. Both men, who are also business partners, have owned several boats and wished to purchase a larger boat capable of taking four or five friends blue water fishing in the Gulf of Mexico off the Louisiana shore. After considering several vessels they decided on the Bayliner. They first saw the boat in Houston when they were in Texas on business. They received statistical information on the boat from the manufacturer which suggests the boat is suitable for their purposes and they were assured by employees of Bayliner that the boat would be perfectly suited for offshore fishing. The advertising literature showed the vessel could be expected to attain speeds of 33.1 mph and cruise with a normal load at 26.8 mph @ 3500 RPM.
However, after taking delivery of the vessel the plaintiffs found the performance to be severely lacking. The vessel would not attain a speed near that represented even at full throttle, and it was necessary to keep the vessel at full throttle to come up to plane. The first fishing trip had to be abandoned as plaintiffs ran out of fuel trying to get enough power to get out into the Gulf.
Thus began extensive correspondence with both the manufacturer and the dealer about the problem. The assertion is that the boat is severely underpowered and totally unsuitable for offshore fishing. It takes a full tank of fuel (104 gallons) and about 10 hours to make the 70 mile round trip from the boat's dock in Lafitte to the blue water fishing grounds of the Gulf of Mexico at the slow speed attainable at full throttle.
In an effort to correct the problem, Bayliner engaged Sol Gilligan, a marine surveyor to ascertain the cause, nature and extent of the problem and to recommend repairs. Mr. Gilligan determined the vessel was severely underpowered and due to its lack of performance was not suited for the intended purpose. Bayliner replaced the original 260 Horsepower O.M.C. motor with a larger 270 horsepower Volvo-Penta motor at some expense to the plaintiffs. Also the propeller was changed on several occasions. Nonetheless, the boat still would not perform satisfactorily and was not used for fishing as was contemplated by the plaintiffs.
Plaintiffs hired Mr. Gilligan to complete a second survey of the boat after it had been repowered. Mr. Gilligan found little difference in the performance and concluded the vessel would not come to plane except at full throttle and was underpowered.
Mr. Gilligan observed that the rate of fuel consumption was exceedingly high causing the vessel to have a short range making it unsafe for use as a blue water fishing vessel. He further stated that the boat would only plane at full throttle.
Plaintiffs also presented evidence from a second marine surveyor, Ken Helmrich, who testified that the boat did not perform satisfactorily and failed to attain speeds as advertised. He agreed that the boat would only plane at full speed, causing excessive strain on the motor and excessive fuel consumption.
Defendants expert, Clark Scarboro, also inspected the vessel. He admitted that the maximum speed attained by the vessel was 28.3 mph which is less than advertised. However, he testified that if speed were not important the boat would be suitable for offshore fishing. There was also testimony concerning the condition of the bottom of the boat. Mr. Scarboro testified that if the bottom were scraped, it could reach speeds of 29 or possibly 32 mph. Mr. Gilligan opined that the bottom had been scraped and pressure washed, and that would not significantly affect the speed of the boat.
Representatives from Wagner testified that the boat did not perform as it should have given the assertions by Bayliner, and that Bayliner offered little cooperation in addressing the problem.
Redhibition is defined in LSA-C.C. Art. 2520:

*1174 Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
One of the essential elements of a redhibitory action is the existence of a defect unknown to the purchaser at the time of the sale which would have influenced the purchaser not to buy the thing if he had known of the defect. Frank L. Beier Radio, Inc. v. Brown, 453 So.2d 656 (La.App. 5th Cir.1984), writ denied 458 So.2d 121 (La.1984). In Louisiana, sellers are bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the buyer's intended use. Rey v. Cuccia, 298 So.2d 840 (La.1974); Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992). LSA-C.C. art. 2521 provides that apparent defects are those defects which the buyer might have discovered by simple inspection and that apparent defects are not among the number of redhibitory vices. Hidden defects are those which cannot be discovered by simple inspection. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127 (La.App. 1st Cir.1992). To determine whether a defect is apparent upon simple inspection the courts have questioned whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of the defect. Fitzmorris v. Kelly, 244 La. 323, 152 So.2d 36 (La. 1963). Whether an inspection is reasonable depends on the facts of each individual case. Creger v. Robertson, 542 So.2d 1090 (La.App. 2nd Cir.1989); Landaiche v. Supreme Chevrolet, Inc., supra.
Where defects are such that they render the use of the purchased object inconvenient and imperfect to the extent that the buyer would not have purchased the item had he or she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.1980), writ denied, 391 So.2d 454 (La.1980); Young v. Ford Motor Co., Inc., supra.
We believe the evidence presented herein supports the trial court's judgment that the boat had latent defects which rendered it useless for plaintiffs purposes. We further find that the trial court was correct in its ruling that the defect was such that a rescission of the sale instead of reduction in the purchase price is warranted, given the evidence that the boat was not suitable for offshore fishing. Damages awarded under this rationale consist of restoration of the purchase price, reimbursement of reasonable expenses occasioned by the sale, and expenses incurred in the preservation of the boat.
Defendant argues that reimbursement of insurance premiums and miscellaneous maintenance expenses occasioned by the sale or incurred for the preservation of the vessel should not have been awarded. We disagree. These damages are provided for by the redhibition articles. Further, this court has allowed insurance premiums as well as other reasonable expenses, as properly awarded in a redhibition action. See, Land & Marine Services v. Diablo Data Systems, 471 So.2d 792 (La.App. 5th Cir. 1985).
Defendant argues in the alternative, that even if rescission is warranted, they should not have been held liable for consequential damages. In determining liability for such damages we look to Article 2545:
The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
A manufacturer is conclusively presumed to have knowledge of defects in the object it produces. George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (La. 1905); Young v. Ford Motor Co., Inc., supra. Thus, because of this presumption of knowledge, a seller is deemed to be in bad faith in selling a defective product. There is evidence that Bayliner knew of the underpower problem of this particular vessel and had re-powered at least ten of these vessels in the past, with only limited results. Thus, we find *1175 no abuse of discretion in the trial court's general award of consequential damages pursuant to article 2545.
The Supreme Court in Young v. Ford Motor Co., Inc., supra, has held that when the requirements of LSA-C.C. Articles 2545 and 1998 are met, purchasers can recover mental anguish damages caused by the purchase of the defective product even though the product is not unreasonably dangerous and they have not sustained physical injuries. Article 1998 provides:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
We believe the purchase of a sport fishing boat such as the one in the instant matter satisfies the requirements of article 1998. Consequently, we find no error in the trial court's assessment of damages for mental anguish.
In this regard the defendant argues the award of $10,000 to each plaintiff was excessive. Given the facts of this case, in which the plaintiffs spent four years and a considerable amount of money trying to get the vessel to operate properly and were unable to use it for their intended purpose of offshore fishing, we can not say the award was excessive and therefore an abuse of the trial court's discretion.
Defendant further argues that the award of $20,000.00 in attorney's fees was not properly documented. An award of attorney's fees is proper under article 2545. At the close of plaintiff's case the plaintiff was granted leave of court to submit legal expenses as well as costs of experts, without objection of defense counsel. Subsequently, plaintiffs submitted invoices for attorney's and expert fees with a post trial memorandum. The invoice for attorney's fees totalled $25,782.35. We do not find that the award of $20,000.00 is an abuse of the trial court's discretion.
Defendant asserts that the trial court erred in awarding interest from the date of the purchase on the purchase price of the vessel and from date of demand on all attorney's and expert fees. We agree. The plaintiff in a redhibition action is entitled to interest from the date of the tender or formal notice of the cancellation of the sale. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978); Land & Marine Services v. Diablo Data Systems, supra. Interest on attorney's fees and expert witness fees is due from the date of judgment. Alexander v. Burroughs Corp., supra; Cajun Elec. v. Owens-Corning Fiberglass, 616 So.2d 645 (La. 1993). We amend the judgment accordingly to reflect that legal interest on the purchase price is due from December 8, 1989, the date formal demand was made upon Bayliner. Further, we amend the judgment to reflect that legal interest is due on the attorney's and expert fees from date of judgment.
In the final assignment of error the defendant challenges the award of attorney's fees to Wagner on its cross-claim for indemnification against Bayliner. Defendant argues that, since Wagner was not found liable and was dismissed from the suit, no indemnification is due to Wagner from Bayliner. We are not convinced by Bayliner's argument. On a third party demand against a manufacturer, an intermediate seller is entitled to an award of attorney's fees, even if the seller is not held liable to the purchaser. Holden v. Clearview Dodge Sales, Inc., 416 So.2d 335 (La.App. 4th Cir.1982), writs denied, 421 So.2d 248 (La.1982); Daigle v. Volkswagen of America, Inc., 580 So.2d 722 (La.App. 3rd Cir.1991). The attorney's fees were properly awarded to Wagner in this matter.
Plaintiffs filed an answer to this appeal seeking an increase in the judgment to reflect the full amount of attorney's fees incurred in the prosecution of their case including costs incurred in answering the appeal.
*1176 In addition, they seek a modification of the judgment to include all slip rent, costs of insurance and other expenses incurred from the date of the original judgment until Bayliner takes possession of the vessel. In support of the claim for additional attorney's fees plaintiffs have attached an invoice for legal services rendered since the trial. This court must render judgment upon the record. LSA-C.C.P. Art. 2164. Attachments to appellate briefs, which are not part of the trial court record on appeal, cannot be considered by this court.
In reviewing the record on appeal we find that the trial court abused its discretion in the award of attorney's fees. We have considered the particular facts of this matter and the reasonableness of the fee in terms of the factors set forth in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), now codified in Rule 1.5(a) of the Rules of Professional Conduct of the Louisiana State Bar Association. We believe the record supports an increase of $2500.00 in fees to the plaintiffs for post-trial proceedings. Further, we award an increase of $1,000.00 in attorney's fees to Wagner. See Blue v. Schoen, 556 So.2d 1364 (La.App. 5th Cir.1990).
We find no abuse of discretion in the trial court's failure to award post-trial damages for additional slip charges, insurance premiums and other expenses.
For the foregoing reasons the judgment of the trial court is amended to award legal interest on the main demand from December 8, 1989 and on attorney's fees and expert witness fees from date of judgment. The judgment is amended to award plaintiffs, Kenneth Poché and Scott Key, an additional $2500.00 for post-trial attorney's fees, and to award Wagner an additional $1,000.00 for post-trial attorney's fees. In all other respects the judgment is affirmed. All costs of this appeal are assessed against appellant.
JUDGMENT AMENDED AND AS AMENDED; AFFIRMED.