665 So.2d 414 (1995)
Maria Antonieta PALOMO
v.
LeBLANC HYUNDAI PARTNERSHIP.
No. 95-CA-278.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 1995.
Rehearing Denied January 17, 1996.
Writ Denied March 22, 1996.
*415 Louis R. Koerner, Jr., New Orleans, for Plaintiff/Appellant.
Roy M. D'Aquila, Jeffery A. Jones, Kenner, for Defendant/Appellee.
Before KLIEBERT, WICKER and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from an action in redhibition filed on behalf of Maria Palomo, plaintiff/appellant, against LeBlanc Hyundai Partnership, defendant/appellee, following a sale of a used Mazda station wagon. The trial judge granted judgment in Palomo's favor, awarding her $1,000.00. He apportioned court costs equally between the litigants. Palomo now appeals. We amend, and as amended, affirm.
*416 On appeal, Palomo specifies the following errors: (1) failure to rescind the sale; (2) failure to award damages and expenses of $5,000.00; (3) failure to exclude the testimony of an undisclosed expert witness; and (4) failure to tax the defendant with all of the costs.
Palomo purchased a used Mazda from LeBlanc March 18, 1993. She noticed engine noise and vibration in August 1993. The vibration stopped September 13, 1993 after a mechanic from Meinike Muffler tightened a part of the muffler. On October 25, 1993 she had her car towed after it began smoking and vibrating. The total mileage used by Palomo was 5,869 miles. It is uncontroverted the car needs a replacement engine. On appeal she contends she is entitled to a rescission rather than a reduction in price. She also claims entitlement to an increase in damages.
The trial judge stated he did not rely on the expert testimony but rather relied upon the actual testimony and exhibits. He was impressed by the honesty of the plaintiff. He felt, however, she failed to meet her burden of proving redhibition since for four to six months the only work done on the vehicle was routine maintenance. He did conclude there was evidence entitling her to quanti minoris and awarded her $1,000.00. He further apportioned the costs equally on the basis that both parties were in good faith.
The record supports his conclusion Palomo is entitled to quanti minoris rather than redhibition. The testimony at trial set forth the following.
Ingrid D'Acquin, Palomo's daughter, testified her mother was frustrated because she did not have transportation. D'Acquin lent her car to her mother so that she would have transportation. This situation was very inconvenient to both parties. It lasted approximately five months. The period began in September or October 1993, and lasted until March or April 1994 when her mother purchased another car.
Joseph D'Acquin, Palomo's son-in-law, also testified that Palomo used his wife's car. He stated this situation was inconvenient and frustrating to Palomo.
Palomo testified she needs transportation to go to her job. On March 18, 1993 she purchased a 1988 Mazda from LeBlanc. She paid $4,811.28. At the time of the purchase she was accompanied by her brother, Raymond Arroyo.
She dealt with a salesman named "Vargas." The car looked new because the engine was clean. This surprised and impressed her. She test drove the car for one block. She told the salesman she needed the car to go to work and to care for her grandchildren. She stated she takes care of her grandchildren three days a week.
Vargas did not tell her the car would only last 5,000 miles. Instead he told her that if she took care of the car it "would last forever." She believed the salesman was telling her the truth. She believed this car would last her for the rest of her life. At the time of the purchase she was 59 years of age.
After she purchased the car she kept it up just as the salesman had instructed. A week after the purchase she went to Shell Auto Care for maintenance. During her testimony various receipts for maintenance were introduced. She was informed by one mechanic that her car was using too much oil. The recommended remedy was to use a heavier oil.
When she began having problems with the car she brought it to Jacques Auto Center. The first statement from Jacques is dated August 18, 1993. At that time she was concerned about the safety of her grandchildren as she drove this car. The August 18, 1993 statement from Jacques notes that there is engine noise which "seems to be a bad water pump." Because the car was vibrating during this time a mechanic recommended she go to the Mazda dealership.
A statement from Royal, the dealership, was introduced. It indicated her car was seen on September 8, 1993. It carried the notation that the car vibrates and makes noise until it is warm. It also noted that the car vibrates in reverse. Palomo testified someone at the dealership suggested she take the car to a "muffler place." She did so. After the mechanic tied some parts of the *417 muffler the car ran better and was not vibrating.
Palomo testified that a Royal mechanic checked Jacques' work before making the recommendation to take the car to a "muffler place." She took the car to Meinike Muffler on September 13, 1993. When the Meinike mechanic tightened something, the vibration stopped.
The second statement from Jacques was dated September 20, 1993. That statement had the notation, "Water pump is good at this time." It describes work involving replacement of certain belts.
A towing receipt dated October 25, 1993 was introduced. Palomo testified regarding this incident. She stated she had been assured her car was running well after the maintenance but that one day while driving across the river it started to vibrate and smoke. She was on the bridge at the time and was frightened. She drove to a gas station and was informed the engine had broken down. Her bill for towing was $20.00.
Palomo then consulted an attorney who recommended she have the car taken to a mechanic named Lanusse.
A second towing bill was introduced. This bill indicated the car was towed to Lanusse on October 28, 1993 at a charge of $35.00. After this time she never used the car again.
A proffer was made of testimony and evidence relating to Palomo's cost of insurance. Introduced into evidence was a document entitled, "LEBLANC HYUNDAI/SUBARU CUSTOMER SERVICE REQUEST." It was dated January 11, 1994 and described a customer request to check the engine noise and smoke on the car. Palomo explained she had the car towed to LeBlanc. She was told an inspection would cost $225.00. This was why she chose not to leave the car with them. Her attorney did arrange for the car to be taken a second time to LeBlanc for an inspection at no charge.
The odometer reading at the time of the sale was 73,087 miles. On the date of trial, in 1994 the reading was 78,956 miles. 5,869 was the total mileage used by Palomo.
Charles Lanusse testified as an expert mechanic. He is one of the owners of Lanusse's Body Shop. He rebuilds six or eight motors a month and averages one Mazda vehicle a day.
Palomo brought her car to him upon the recommendation of her then attorney, Mr. Collins. Lanusse inspected the car and concluded it was burning oil out of the engine instead of lubricating the engine. This problem would eventually cause the motor/engine to "lock up." At the time he saw the car the engine had not "locked" or been close to "locking." He felt the motor/engine was worn out. He felt this problem was "probably... progressive since [Palomo] bought [the car]."
He stated the engine needed to be replaced. However, the only way to really tell what was happening in the engine was to dismantle it. He did not do so. He stated a used engine would cost $950.00 and labor would be $326.00 for a total cost of $1330.70. A new engine with a 36,000-mile warranty would cost $2857.57. If Palomo wanted to keep this car for her lifetime he would recommend a new motor/engine. However, usually a car with this number of miles he would recommend a rebuilt engine.
At the time he saw the car it could be used if it were carefully watched so that oil was put in it every couple of days. He did not believe this vehicle had been properly maintained through the course of its lifetime.
Jeffrey C. Collins testified as follows. He was the first attorney contacted by Palomo. Collins recommended Palomo go to Lanusse with the car. On October 28, 1993 he had the car towed from Lanusse to LeBlanc. LeBlanc would not inspect the car without her first paying a few hundred dollars. Palomo then had the car towed to her home. Collins met with Paul Peebles of LeBlanc on January 7, 1994. On that date Peebles agreed to have the car examined free of charge. Collins had a telephone conversation with Peebles on January 25, 1994. Peebles told him there was a deep problem and noise in the engine. Peebles told him there was probably a blown head gasket.
*418 Collins asked Peebles if he would take the car back but Peebles refused. Peebles offered to obtain another engine for Palomo; however, Palomo would have to pay the cost of approximately $450.00 to $500.00. Peebles told Collins Palomo's cost for labor would be approximately $400. The only assistance offered by LeBlanc was to help Palomo locate an engine.
Collins wrote a certified letter dated February 7, 1994 to Peebles at LeBlanc in which he documented the problems with the car. This was his last contact with Peebles. Collins then withdrew from the case because he did not typically handle this type of claim. Palomo then went to the current attorney.
Paul Peebles testified as follows. He is a partner at LeBlanc Hyundai. The car was purchased as a used car from another dealership. Upon purchase new hubcaps were placed on it. He was unaware of any engine work performed on the car prior to sale.
Collins showed him receipts of the work performed on the car. In his opinion these were all routine maintenance. He objected to being held responsible for the car since other people had worked on it previously. He stated it was possible for a blown head gasket to occur through improper procedures during maintenance. He also felt Palomo had damaged the car by driving it off the bridge while it was overheating.
Based on a compression test he felt there was a blown head gasket. He felt the automobile was currently defective and in need of a replacement engine.
Arturo Loo testified as follows. He is Palomo's brother. He has worked as a mechanic for 28 years. He has not worked as a mechanic since 1985. He was present at the time LeBlanc's mechanics inspected the car. They agreed with him that the car needed another engine. Loo was unable to determine the cause of the problem.
Patrick Fox, the defense's expert testified as follows. He has been employed by LeBlanc as an automotive technician for two years. He is a certified Mazda master technician. He examined the repair receipts by Palomo and stated these were receipts for routine maintenance. He stated the improper replacement of a timing belt, a procedure performed by Jacques, would cause the problems complained of. On cross-examination he admitted he had looked at the car but did not look at the timing belt. He had no evidence the timing belt had been installed improperly.
In his opinion had the engine problem been present from the date of sale Palomo would have had problems at the outset. He felt that since she drove the car 5,000 miles the defect was not present at the time of sale. Driving the car as she did over the bridge could have caused motor damage. He stated the blown head gasket was not due to the car burning oil.
Fox testified the lifetime average on a Mazda motor is 120,000 to 150,000 miles dependant upon the maintenance.
FAILURE TO SUPPLEMENT INTERROGATORIES
Appellant argues that the trial judge erred in failing to exclude the expert testimony of Pat Fox. It is undisputed that the interrogatories directed toward revealing experts and the substance of their testimony were never supplemented. Although appellee answered by stating it was reserving its right to call an expert, no expert was ever disclosed prior to trial. The plaintiff learned for the first time during the course of trial that an expert would testify and the substance of that testimony.
The record reveals that counsel for defendant/appellee agreed to delay that portion of the trial to allow plaintiff/appellant's counsel the opportunity to take Fox's deposition and to obtain any other experts. Plaintiff's counsel declined on the basis this remedy would not cure the problem since he would have tried the case differently. The trial judge approved the constructive continuance agreed to by defense counsel.
La.C.C.P. art. 1425(1)(a) provides in pertinent part:
A party may through interrogatories or by depositions require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state *419 the substance of the facts to which the expert is expected to testify ...
La.C.C.P. art. 1428 states in pertinent part:
A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
We have held in Sicarelli v. State Farm Fire and Casualty Company, 556 So.2d 179 (La.App. 5th Cir.1990) at 181:
We agree with our brothers in the First Circuit that:
a trial judge is given "great discretion in deciding whether to receive or refuse the offered testimony of witnesses and any bias must be in favor of receiving the testimony." Coignet v. Deubert, 413 So.2d 253, 256 (La. App. 4th Cir.1982).

Schwamb v. Delta Air Lines, Inc., 516 So.2d 452 (La.App. 1st Cir.1987), writ denied, 520 So.2d 750 (La.1988). See also Nu-Lite Elec. Whole. v. Colonial Elec., 527 So.2d 498 (La.App. 5th Cir.1988) where we accorded the trial court wide discretion in its decision to either exclude or allow evidence pursuant to a failure to seasonally supplement responses to interrogatories.
We concluded in Sicarelli that the trial judge did not abuse his discretion. Once plaintiff's counsel became aware of the expert there was no attempt to depose this expert although there had been time to take the depositions of other experts.
Appellant cites various state and federal cases in brief in support of its argument this case should be remanded for a new trial. However, we find our decision in Anderson v. Visa, 478 So.2d 1346 (La.App. 5th Cir.1985) to be controlling. We held at 1350 that:
where a party seeks to exclude evidence on the grounds of surprise, the court may grant a "constructive continuance" by delaying the presentation of the questioned evidence until later in the trial to give the complaining party time to prepare rebuttal evidence, and thus avoid prejudice from surprise, cf. Fontenot v. Fontenot, 427 So.2d 27 (La.App. 3rd Cir.1983).
We held in Anderson at 1351 that:
even were such evidence initially inadmissible on the grounds of prejudicial surprise, this objection was cured by the granting of a constructive continuance.
Accord, Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3rd Cir. 3/1/95); 651 So.2d 444, 450.
In this case, plaintiff/appellant's counsel declined the offer of a constructive continuance. He therefore waived his objection since such a continuance would have cured any prejudicial surprise. Furthermore, the trial judge stated in his oral reasons for judgment that he did not rely on expert testimony, but relied on the factual testimony and that of the exhibits. This specification lacks merit.

QUANTI MINORIS
The trial judge awarded a reduction in price. He evidently concluded a defect existed at the time of sale. The trial judge used his discretion pursuant to La. Civil Code art. 2543 to "decree merely a reduction of the price." We find no abuse of that discretion.
In Thornton v. Pedersen, 421 So.2d 465 (La.App. 3rd Cir.1982) the court held at 469:
The trial court has reasonable discretion to assess damages based upon the facts and circumstances of the case. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). This legal principle is equally applicable in a suit for quanti minoris.
In Davidson v. New Roads Motor Co., Inc. 385 So.2d 319 (La.App. 1st Cir.1980), writ denied, 391 So.2d 454 (La.1980) the appellate *420 court amended a trial court judgment which awarded quanti minoris rather than rescission. Although the car was a new, luxury car, the analysis undertaken by the court applies herein. In Davidson, the court granted rescission since despite many remedial attempts there still remained "significant major defects which were never remedied." Id. at 322. In the instant case the evidence is uncontradicted that the engine is the problem and that the car needs a replacement engine.
In Poché v. Bayliner Marine Corp., 93-721 (La.App. 5th Cir. 2/9/94); 632 So.2d 1170 we upheld the trial court's granting of rescission in an action involving a boat. The boat was purchased for offshore fishing and was unsuitable for that purpose.
We note that Acts 1993, No. 841, § 1 revised the civil code articles on redhibition effective January 1, 1995. This sale occurred March 18, 1993. Thus, the law in effect in 1993 governs. Accord, Sydnes v. Harwell, 94-1194 (La.App. 3rd Cir. 3/1/95); 651 So.2d 419.
La.Civ.Code art. 2520 provides for rescission when the defect "renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
La.Civ.Code art. 2531 provides in part:
The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521 [apparent vices are not redhibitory], or if he is unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for value of any fruits or use which the purchaser has drawn from it ...
We note that "in an action for a reduction in price, the purchaser must prove that the alleged defect diminished the value of the object of the sale and that the defect existed prior to the sale." Credeur v. Moss Motors, 460 So.2d 759 (La.App. 3rd Cir.1984) at 761.
Harvell v. Michelli, 500 So.2d 871 (La.App. 1st Cir.1986) involved a used car. In that case, unlike the instant one, the car began vibrating and making noises the day after the purchase. Once parked, the car would not start. It was driven only a total of 30 miles. The appellate court affirmed the rescission. Here the car was driven over 5,000 miles.
In LaFleur v. Boyce Machinery Corporation, 294 So.2d 498 (La.1974) the court considered the issue of whether rescission was appropriate for a used bulldozer tractor. The engine overheated shortly after the sale. Despite attempts to remedy the problem the tractor remained defective. After the appellate court reversed the trial court's granting of rescission, the Supreme Court reinstated the trial court's judgment. The court reasoned at 499:
If the repairs had ended in restoring the bulldozer to a condition which would make it capable of performing the intended work, we would say that a reduction in price would be a proper decision of the case. Where, however, the attempted repair was a vain and useless exercise, leaving the machine in the same unsatisfactory condition, incapable of performing the work it was represented and intended to perform, the rescission of the sale should be allowed. Qauntun minoris [sic] does not furnish the buyer with a satisfactory machine. The condition of the machine remained altogether unsuited to its purpose [citations omitted].
In the instant case there is no evidence the replacing of the engine would be a vain and useless act as it was in LaFleur.
Thus, the trial judge correctly granted quanti minoris rather than rescission.

AWARD
Appellant argues she is entitled to $5,000 in various expenses incurred. We find no abuse of the trial judge's discretion in his failure to award expenses associated with maintenance since these were not attributed to the defect. However, the trial judge abused his discretion in failing to award Palomo towing expenses she incurred as a result of the defect. Palomo submitted the following *421 bills for towing: (1) $20.00 from the Amoco Motor Club; (2) $35.00 from Mardi Gras Towing; and (3) $35.00 as towing charges placed on a Visa for a company whose name is illegible. Although there was a notation on Lanusse's estimate for towing charges of $35.00 there is no receipt for payment of this amount. Neither Palomo nor Lanusse explained this notation. Thus, Palomo has proven entitlement to $80.00 for towing charges related to the defect.
Palomo also testified regarding the amount of insurance paid by her for the automobile. However, the trial judge sustained defense counsel's objection to the admissibility of that testimony and the documents on the basis this item of damage was not compensable. The trial judge did allow the evidence to be proffered. Nevertheless, appellant does not specify as error the trial judge's refusal to admit this evidence nor does appellant brief this issue on appeal. In Herberg v. Dixon, 531 So.2d 532, 535 (La. App. 5th Cir.1988) we held:
Uniform Rules of Courts of Appeal, Rule 2-12.4 provides in pertinent part that "[a]ll specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed."
Thus, we clarify that this court does not consider the issue of whether insurance payments constitute an element of damages since that issue has not been preserved for appeal. Moreover, even assuming this issue was preserved for appeal and that it was compensable in this case, appellant's global introduction of insurance payments would not satisfy her burden of proof as there is no indication what portion was for the preservation of the car. Poché, supra.
Regarding Palomo's claim for damages resulting from inconvenience or mental anguish we conclude the trial judge did not abuse his discretion in denying such recovery. The trial judge concluded the seller was in good faith. There is no evidence the seller knew of the defect at the time of the sale. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981); Bourne v. Rein Chrysler-Plymouth, Inc., 463 So.2d 1356 (La.App. 1st Cir.1984), writ denied, 468 So.2d 570 (La.1985).

COSTS
Appellant argues it was an abuse of discretion for the trial judge to apportion costs equally. We agree.
The allocation of costs is within the discretion of the trial court. La.Code Civ.P. art. 1920. In Greene v. Greene, 94-79 (La. App. 3rd Cir. 10/5/94); 643 So.2d 891, 894 the court found no abuse of discretion on the part of the trial judge for apportioning costs equally when that party had been partially successful. The court explained at 894:
A trial court is vested with great discretion in determining who is liable for costs of court. The trial court may assess costs against any party in the proportion it deems equitable, even against the party prevailing on the merits. LSA-C.C.P. art. 1920; D.B. Orban Co. v. Lakco Pipe, 496 So.2d 1382 (La.App. 3d Cir.1986). A trial court's assessment of costs can be disturbed only upon a showing of an abuse of discretion. D.B. Orban, supra; Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La.App. 5th Cir.1984), writ denied, 449 So.2d 1359 (La.1984). Although Cheryl prevailed in part below, Robert also prevailed on certain issues. Therefore, we cannot say the trial court abused its discretion in splitting costs equally between the two parties.
However, in Greene both parties had filed rules. Accord, Simon v. Simon, 521 So.2d 1255 (La.App. 3rd Cir.1988), writ denied, 526 So.2d 798 (La.1988) wherein both parties had motions before the court. In the instant case, only plaintiff sought relief; she prevailed in her claim for quanti minoris. Under these circumstances we find an abuse of discretion.
Accordingly, for the reasons stated, the judgment is amended to award an additional $80.00 for expenses. It is also amended to cast defendant, LeBlanc Hyundai Partnership, for all costs. The judgment is affirmed in all other respects. Costs on appeal are to be borne by defendant/appellee, LeBlanc Hyundai Partnership.
*422 AMENDED, AND AS AMENDED, AFFIRMED.
GOTHARD, J., concurs.
GOTHARD, Judge, concurring.
For the following reasons, I respectfully concur. The plaintiff paid $4,811.28 for a car which ran for 5,869 miles and now needs a new engine. Clearly, the defective engine constitutes a redhibitory vice. La.C.C. art. 2520. The question, then, is to what remedy is plaintiff entitled? I submit that rescission of the sale is the appropriate remedy under these circumstances and that the trial court abused its discretion in awarding quanti minoris instead. We have recently held that "[w]here defects are such that they render the use of the purchased object inconvenient and imperfect to the extent that the buyer would not have purchased the item had he or she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price." Poché v. Bayliner Marine Corp., 93-721 (La.App. 5th Cir. 2/9/94), 632 So.2d 1170, 1174. In the instant case, the plaintiff would not have purchased the car had she known that it would be necessary to replace the engine so soon after the sale. Accordingly, the plaintiff is entitled to a rescission of the sale, as opposed to quanti minoris. Finally, I find LaFleur v. Boyce Machinery Corp., 294 So.2d 498 (La.1974), to be inapposite to the facts presented here. In LaFleur, the seller made several efforts, which were ultimately unsuccessful, to repair the bulldozer tractor. Here, the seller has failed to make the one necessary repair, namely replacing the engine. As La.C.C. art. 2531 states, "[a] seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer with interest from the time it was paid...." Based on the foregoing, I concur in the opinion of the court.