567 So.2d 637 (1990)
James GENNINGS
v.
Maggie and Sophia NEWTON.
No. 89-CA-0987.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1990.
*638 Mark Moreau, New Orleans, for plaintiff-appellee.
Louis A. Gerdes, Jr., New Orleans, for defendants-appellants.
Before SCHOTT, C.J., and BARRY and BYRNES, JJ.
BARRY, Judge.
The issues in this damage suit for wrongful eviction, breach of warranty of habitability and peaceable possession include the denial of a new trial motion and reinstatement of the original judgment.
James Gennings' suit against Maggie and Sophia Newton alleges that they owned[1] the apartment which he rented under an oral lease from September 20, 1985 through May 28, 1986 for $60.00 weekly. He alleges that on April 21, 1986 the Newtons turned off his electricity and padlocked the fuse box. On May 1, 1986 the Newtons disconnected the hot water service to his bathroom. On May 15, 1986 the Newtons changed the locks on his apartment and he was locked out until May 19, 1986. Gennings stayed in the apartment without electricity and hot water until May 28, 1986. Gennings claims the Newtons failed to follow legal eviction procedures.
Gennings also alleges that the apartment was not maintained in a decent, safe or sanitary condition and was in violation of *639 La.C.C. Art. 2695.[2] He claims that water leaked under the kitchen sink, the bathroom was filthy and its floor rotten, and the stove was defective. Gennings asked for $3,500.00 in damages: $2,500.00 for inconvenience from wrongful eviction and unsafe and unsanitary condition of the premises; $500.00 for breach of warranty of habitability; and $500.00 for violation of peaceable possession of the apartment.
The Newtons reconvened for $1,000.00 back rent and $1,500.00 in property damages, plus court costs.
Gennings filed a motion to compel answers to interrogatories. Defense counsel and defendants did not appear and a judgment ordered that answers be served on Gennings within ten days of April 27, 1987. No answers were forthcoming and Gennings filed a rule to dismiss the reconventional demand. On July 27, 1987 the trial court denied the rule but ordered the Newtons to pay Gennings' attorney's fees and court costs and to file their answers. The interrogatories were answered.
Trial was set for November 2, 1987, but defense counsel did not appear although served with notice of trial. The court let the matter go forward, but noted it would give defense counsel a new trial if requested on reasonable grounds. After testimony judgment was rendered in favor of Gennings and against Maggie and Sophia Newton for $3,500.00. The reconventional demand was dismissed and the prior judgments on the rule to dismiss and on the motion to compel remained in effect.
On November 10, 1987 the Newtons filed for a new trial and a petition to set aside the judgment. On December 18, 1987 the court granted a new trial and trial was set for April 18, 1988 with notice served on both counsel. Gennings' had the trial continued twice, it was set for January 11, 1989, and notice of trial (dated November 22, 1988) for January 11, 1989 was served on defense counsel. The record contains a deputy constable's return which states that a true copy of the notice was personally served on defense counsel on December 7, 1988.
On January 11, 1989 the matter was called for trial and defendants and their counsel did not appear. Gennings' counsel noted that defense counsel had not appeared the first time the matter had been set, had been given a new trial, and again failed to appear. Gennings' counsel asked that the original judgment be reinstated so that the witnesses would not have to testify again. The court noted that defense counsel was personally served with the trial notice and reinstated the November 2, 1987 judgment. Judgment was rendered January 17, 1989 in favor of Gennings and against Maggie and Sophia Newton in the amount of $3,500.00 plus legal interest and costs. The Newton sisters' reconventional demand was dismissed.
On January 19, 1989 defense counsel filed another motion for a new trial alleging that he was not served with the notice of trial. The court denied the motion on February 9, 1989. Maggie and Sophia Newton now appeal the January 11, 1989 judgment and the February 9, 1989 judgment denying the new trial motion. Gennings filed a motion to dismiss the appeal as untimely. On September 1, 1989 a panel of this Court denied the motion to dismiss which is res judicata.
The Newtons argue that their counsel was not personally served with the second trial notice and their motion for new trial should have been granted or at least a hearing held. They also argue that if the trial court was correct in denying a new trial and reinstating the prior judgment, the November 2, 1987 judgment reinstated on January 11, 1989 was not supported by the evidence.

MOTION FOR NEW TRIAL
Generally, an order denying a motion for new trial is not appealable absent a *640 showing of irreparable injury. La.C.C.P. Art. 2083; O'Neill v. Sumrall, 447 So.2d 1269 (La.App. 4th Cir.1984); Scheffler v. Scheffler, 453 So.2d 960 (La.App. 5th Cir. 1984). When a nonappealable issue is raised in conjunction with other appealable issues as here, it may be reviewed for the sake of judicial economy and justice. Mediamolle v. K-Mart Discount Stores, 494 So.2d 1187 (La.App. 5th Cir.1986).
Defense counsel filed his second motion for a new trial with the bare allegation "that he was not served with trail [sic] notice for January 11, 1989." No memorandum was attached. Counsel argues that the motion was improperly denied ex parte.
First City Court Rule 10, Section 8 provides that "notice of trial shall be given to the adverse party or his attorney of record, either through service by the Constable, or by `Order of Court', in writing or orally, unless otherwise provided by law." In defendant's first motion for new trial counsel argued that although he was served with the notice, he was not personally served. He claimed his secretary accepted service but did not put the notice into his book. By brief counsel argues that the "identical problem" happened with the January 11, 1989 trial notice even though he did not file a memo with the second motion for new trial. By brief counsel argues he was prepared to show that he had not seen the deputy constable except on an occasion one year prior to the alleged date of service and the deputy would agree. His motion only contained his unsubstantiated statement that he had not been served.
First City Court Rule 9, Section 5 provides: "Motions for new trial shall be submitted by the movers on briefs. Should the Judge desire oral argument, he will so order." Section 2 of the same rule notes that the mover "shall file" with his pleadings a brief statement of reasons in support thereof and a citation of authorities on which he relied; failure to comply may be deemed sufficient justification for a denial by the judge of the right to oral argument and justification to dismiss the motion.
There is no absolute right to a contradictory hearing on a motion for a new trial. Such a motion may be denied ex parte unless the allegations clearly require a hearing. Newman v. Chamber of Commerce of Kentwood, 462 So.2d 299 (La. App. 1st Cir.1984), writ denied, 463 So.2d 1319 (La.1985); Starks v. Kelly, 435 So.2d 552 (La.App. 1st Cir.1983). First City Court rules do not mandate a hearing. Whether oral argument is allowed is within the trial court's discretion. There was no error by not holding a hearing.
Lack of notice does not fall within the peremptory grounds for a new trial; however, it is within the trial court's discretion to grant a new trial on that ground. La.C. C.P. Arts. 1972 and 1973. A trial court decision will not be set aside unless there was a clear abuse of discretion. Dimitri v. Linda's Love Lace of La., Inc., 514 So.2d 194 (La.App. 4th Cir.1987).
The record contains a deputy constable's return showing service of a true copy of the trial notice on defense counsel. The return of an officer is given great weight and is presumed correct, La.C.C.P. Art. 1292, and the burden rests on the party attacking service to establish otherwise by clear convincing evidence. Billiot Brothers, Inc. v. Bercier, 447 So.2d 1090 (La.App. 1st Cir.1983); Samrow v. Samrow, 428 So.2d 547 (La.App. 4th Cir.1983). A return cannot be impeached by the uncorroborated testimony of the party upon whom service is stated to have been made by the officer. Blackburn v. Deason, 447 So.2d 617, 619 (La.App. 4th Cir.1984), quoting Hood Motor Company, Inc. v. Lawrence, 334 So.2d 460, 462 (La.App. 1st Cir. 1976), writ denied, 338 So.2d 288 (La.1976).
Defense counsel provided nothing in his motion or in a memo to rebut the presumption of correctness of the deputy constable's return. We conclude that the trial court properly denied the motion for new trial. See Mitchell v. Dresser Industries, Inc., 472 So.2d 183 (La.App. 4th Cir.1985).

REINSTATING FIRST JUDGMENT
The Newtons argue that there is no statute or jurisprudence that permits a *641 court to recall a previous order granting a new trial and to reinstate the original judgment without evidence. However, La.C. C.P. Art. 1978 provides in pertinent part:
It shall not be necessary in a non-jury trial to resummon the witnesses or to hear them anew at a new trial if their testimony has once been reduced to writing, but all such testimony and evidence received on the former trial shall be considered as already in evidence.
Gennings' witnesses testified at the November 2, 1987 trial when defense counsel failed to appear. Considering the fact that the trial court had granted defendants a new trial and counsel did not appear a second time for trial, we find no error in the court's decision not to re-hear Gennings' witnesses.

Sufficiency of Evidence
The Newtons argue that Gennings did not prove: that they turned off his water, disconnected the electricity, or locked him out of his apartment; if he suffered any loss; or how long the deprivations lasted. They claim they filed an eviction and a rule absolute was rendered May 17, 1988. They argue that Gennings only claims he was locked out four days and therefore the award is excessive. They also argue that the only basis for a judgment against Sophia Newton was the unsworn statement by Gennings' counsel.
Gennings' brief claims the judgment was supported by evidence showing a series of torts, including violation of the landlord's warranty of habitability, failure to make repairs, termination of electricity for five weeks, termination of water for one month, and wrongful eviction and trespass by padlocking the apartment for four days prior to the eviction judgment.
Gennings testified that he rented the apartment from Maggie Newton, the owner, pursuant to an oral contract to pay $60.00 weekly with a $60.00 deposit. Maggie Newton stated that she would make repairs and put in some "new stuff." There were no knobs on the stove, the chifforobe had no door, there was no bathroom sink and there was a leak in the kitchen. Gennings identified a number of photographs that had been taken of the stove, the bathroom, and the kitchen sink showing deplorable conditions. There were no screens on the kitchen and bathroom windows. Gennings denied causing any damage to the apartment.
Gennings claimed that Maggie Newton cut off the electricity and the water, but he did not know the date. He claimed he lived without water and electricity a couple of months. Gennings called the police and Maggie Newton was compelled to restore the water and gas and to put in a window pane. The electric service was not returned and he used candles. Gennings claimed at that point his rent was paid, but the last time he attempted to pay, it was refused.
Gennings testified that Maggie Newton put double padlocks on the door. Smoke was reported to the fire department and a fireman cut the lock off. After the fire department left, Gennings testified that Maggie Newton called the police and they told him that Maggie Newton did not want him in the building. Gennings informed the police that his rent was paid until Saturday, showed them a rent receipt, but the police forced him to leave. Gennings stated he was locked out of his apartment from Thursday until Tuesday and he stayed at a friend's house without his belongings. Gennings testified that Maggie Newton and Sophia Newton, and a friend were present when he left.
City Inspector Francis Schroeder testified that his job involved inspecting houses for code violations. He inspected the property on May 2, 1986. Schroeder testified that the Department of Public Safety and Permits became involved with the property in 1981 and there was an open file. There were housing violations from the earliest inspection of the apartment.
Schroeder testified that on May 2, 1986 screen windows were missing and a screen door was torn. From what he could see there were holes in the bathroom wall, window panes broken in the bedroom, a window sash was improper and the floors were not level. The door threshold in the *642 first room and the bathroom door casing were deteriorated. The water was off so Schroeder could not check for leaks. The electricity had been turned off (his reports notes it was cut off by the owner) and that constituted a code violation. He noted all the violations in a written inspection report which was offered into evidence. The Newtons were given ten days to correct the problems or the Department would evict the tenant.
Delores Boeckl, a social worker for Annunciation Parish who had been working the case of Gayle Brown (the lady with whom Gennings resided) testified that Brown brought Gennings to speak to her so that she might have the water service returned. Boeckl testified that Gennings had paid his rent and his landlord did not give him an eviction notice.
On the night Gennings was told by the police to leave (sometime in May, 1986), Brown and Gennings told Boeckl that the landlord had put a padlock on the door. Boeckl tried to explain to the police that the landlord was putting Gennings and Brown out illegally, and one of the officers allegedly threatened Boeckl if she did not mind her own business. Boeckl said she advised Gennings and Brown to stay away from the apartment because she felt the police would arrest them if they attempted to retrieve their belongings. Boeckl sent them to the New Orleans Legal Assistance Corporation for help.
A tenant is entitled to damages for uninhabitable premises, including mental anguish, anxiety, and worry. Smith v. Castro Brothers Corporation, 443 So.2d 660 (La.App. 4th Cir.1983), writs denied, 446 So.2d 1229 and 446 So.2d 1231 (La. 1984); Evans v. Does, 283 So.2d 804 (La. App. 2d Cir.1973). A tenant is also entitled to damages when a landlord terminates his utilities prior to an eviction judgment. Weber v. Bon Marche Pharmacy, 378 So.2d 520 (La.App. 4th Cir.1979), writ denied, 381 So.2d 1220 (La.1980).
A landlord must resort to the judicial process to take possession of leased premises and may not engage in self-help except when a lessee has unjustifiably abandoned the leased premises. Richard v. Broussard, 495 So.2d 1291 (La.1986). Padlocking a tenant out of his apartment constitutes the tort of wrongful eviction or trespass and the tenant may recover damages from the landlord. White v. Board of Supervisors of Southern University, 365 So.2d 583 (La.App. 1st Cir.1978); Weber v. McMillan, 285 So.2d 349 (La.App. 4th Cir. 1973), writs denied, 288 So.2d 357 and 288 So.2d 358 (La.1974).
Gennings testified that he was without water and electricity long before the eviction judgment. Inspector Schroeder corroborated that Gennings' apartment was without electricity and water on May 2, 1986 which was fifteen days prior to May 17, 1986, the date of the eviction judgment. Gennings testified that he was locked out of his apartment for at least four days and Delores Boeckl corroborated that testimony. Gennings testified to the uninhabitability of the apartment due to the numerous problems which were noted by Inspector Schroeder in his report. There were numerous code violations at the time of Schroeder's inspection on May 2, 1986.
The record amply supports the award of $3,500.00 to Gennings.
There was no testimony or evidence to prove Sophia Newton was in fact the agent of the owner, or that she was involved in the tortious activities. The trial court erred by rendering judgment against Sophia Newton.
The judgment is amended to delete Sophia Newton and is otherwise affirmed.
AMENDED; AFFIRMED.
BYRNES, Judge, dissenting in part with reasons.
I respectfully dissent from the panel majority on the amount of damages awarded to James Gennings.
Plaintiff failed to provide rental receipts or proof of how long the water and electricity were cut off. Gennings testified that the police put him outside the apartment on Thursday but his rent was not due until the next Tuesday. He claimed to have shown *643 rental receipts to the police but did not produce any rental receipts at trial. Gennings estimated that the electricity and water were cut off for approximately two months but did not provide any supporting evidence of the length of time involved. Plaintiff could not recall the date of when he was locked out of the apartment and stated that he did not talk to Mrs. Delores Boeckl after that. Mrs. Boeckl testified that the plaintiff and Gayle Brown came to her home that night.
An award of $3,500 is clearly excessive for breach of warranty of habitability and peaceable possession as well as wrongful eviction for a four night period where Gennings rented the apartment for sixty dollars weekly. Damages for the eviction should not exceed the amount of one month's rent of $240. I am concerned that the majority's award of $3,500 total damages provides a precedent that is clearly wrong based on the lack of evidence in this case. The total damage award should not exceed $500.
NOTES
[1] At trial Gennings' counsel stated that Maggie Newton was the record owner, but Sophia lived next door and was responsible for collecting rent and handling eviction procedures for her sister.
[2] C.C. art. 2695: The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.