671 So.2d 525 (1996)
Brenda GANHEART
v.
EXECUTIVE HOUSE APARTMENTS
No. 95-CA-1278.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1996.
Rehearing Denied April 24, 1996.
*526 Brenda Ganheart, New Orleans, in proper person, appellant.
John P. Wolff, III, Heidi Thompson, Keogh, Cox & Wilson, Ltd., Baton Rouge, for appellee.
Before SCHOTT, C.J., and LOBRANO and JONES, JJ.
LOBRANO, Judge.
Plaintiff, Brenda Ganheart, appeals a trial court judgment which awarded her $1,500.00 in damages from her former landlord, Executive *527 House Apartments. Plaintiff argues that this award was inadequate and should be increased. The defendant, Executive House Apartments, answered plaintiff's appeal arguing that the trial court erred in awarding any damages to plaintiff. Alternatively, defendant argues that plaintiff's award should not be increased. We affirm.
Plaintiff filed a petition for damages claiming that the defendant's failure to correct repeated plumbing problems in her apartment made the apartment uninhabitable and caused her to incur damages, including her own increased housecleaning services, expenses for cleaning supplies, damaged possessions, meals purchased outside of her home and mental anguish. Without assigning reasons the trial judge awarded plaintiff $1,500.00, plus legal interest and all costs. This appeal followed.
Plaintiff complains that the award is inadequate. Defendant argues that there was insufficient evidence to support any award. Defendant further argues, that as a matter of law, plaintiff is not entitled to an award for mental anguish in this breach of contract case.
Plaintiff's uncontradicted testimony established the following facts: Plaintiff rented an apartment from defendant on Chef Menteur Highway in New Orleans from 1975 through 1993. Plaintiff and defendant entered into a residential lease agreement, which was renewed on December 1, 1986. Although it expired on November 31, 1987, the terms of the lease were in effect at the time the problems giving rise to this suit occurred.[1]
One evening in November 1992, water began leaking through the ceiling of plaintiff's kitchen. The management office was closed at the time so she reported this problem to the apartment manager the following morning. A maintenance employee came to plaintiff's apartment later that day and then went to the apartment directly above plaintiff's apartment. The maintenance employee returned and told plaintiff that the dishwasher in the upstairs apartment had over-flown because of a defective gasket and that he had advised the upstairs tenant not to use her dishwasher again. Plaintiff realized that the problem had not been corrected when, several days later, the upstairs tenant used her dishwasher which again caused water to leak into her apartment.
Plaintiff complained again to the apartment manager. The manager responded by sending a maintenance employee to disconnect the water supply of the dishwasher in the upstairs apartment. Shortly thereafter, plaintiff noticed that a portion of her kitchen ceiling was sagging. She punctured the sagging area and water came out. The problem continued to the point that the kitchen ceiling began to collapse in certain areas. The kitchen cabinets buckled and the water spread to the living room and dining room and saturated the carpet in those rooms. Plaintiff made a makeshift ceiling for the kitchen out of plastic garbage bags and pie pans. The situation progressively worsened until the plaintiff finally vacated the apartment in February 1993 after no repair work had been performed by the defendant.
At the time plaintiff reported the second kitchen flooding to the defendant, she also reported that water was leaking from her bathroom ceiling onto her bathtub and bathroom floor. This problem seemed to occur whenever the upstairs tenant used her bathroom shower. Additionally, she reported that the hot water faucet in her bathtub was not working properly. The defendant did not attempt to repair either of these problems.
Despite plaintiff's continuous cleaning efforts, the water which started accumulating in the kitchen and bathroom spread into the living room, dining room, bedroom, foyer and into the closet that contained the air conditioning and heating units. The wall between plaintiff's bedroom and bathroom became mildewed and the ceiling beams had mildew spores on them. The tile on the bathroom floor buckled. Plaintiff advised the apartment manager in early December 1992 that she was searching for a new apartment because *528 no attempt had been made to repair the problems.
As a result of this situation, plaintiff testified that she had to incur additional expenses for the unusually large amount of cleaning supplies needed to combat the problems caused by the water leakage, as well as spend an extraordinary amount of time cleaning the apartment. She estimated the value of her cleaning services at $8.50 per hour for a total of $2,400.00 for an estimated 282 hours of additional cleaning time. The water ruined some of plaintiff's possessions in the kitchen and rendered the kitchen unusuable which required plaintiff to buy her meals out of the apartment at a cost of $10.00 per day for a total of $800.00. Plaintiff also testified that the mildew condition aggravated her pre-existing respiratory problems.
Plaintiff stated that from the time the plumbing problems began in November 1992 until she moved out in February 1993, the apartment had a bad odor due to the mold and mildew. Plaintiff feared the ceiling would collapse and she also worried about the possibilities of rodent infestation, electrical fire and slipping on the wet carpet. She did not use the heating system because she thought the air would circulate the mildew spores which would aggravate her respiratory problem. Plaintiff had to move her furniture away from the wet areas and had to break down cardboard boxes to walk on because the carpet was so soggy.
Plaintiff continued to pay the rent throughout the time period at issue, from November 1992 through February 1993. However, all of her requests for repairs were ignored by the defendant. Plaintiff introduced into evidence her lease and photographs of the damaged areas of her apartment. Plaintiff also testified that defendant failed to return her security deposit. Although she admitted that she did not give defendant written notice of the defects in the apartment or of her intention to vacate the apartment as stipulated in the lease, she verbally notified the apartment manager of the maintenance problems and her intention to vacate.
Monica Dugais, plaintiff's friend, testified as to the condition of plaintiff's apartment before and after November 1992. She corroborated plaintiff's testimony as to the mold and mildew in the apartment, the visible ceiling damage and damaged kitchen appliances. Dugais stated that she visited plaintiff often but started limiting her visits as the condition of the apartment worsened because the mold and mildew affected her asthma condition. She said plaintiff was constantly cleaning the apartment, but it still had a moldy odor.
Plaintiff specifically complains that the trial judge abused his discretion in awarding, what she considers, to be a nominal amount for damages incurred by the uninhabitable condition of her apartment. She characterizes the award as general damages and claims that the trial judge erred in not awarding special damages and/or punitive damages. She also argues that her security deposit should have been ordered returned, along with penalties and attorney's fees for defendant's willful failure to return same.
Because the trial court did not specify what item or items of damage are included in the $1,500.00 award, it is necessary for us to determine if there is sufficient evidence to support an award of that amount for any of the specific damages sought by plaintiff.
Initially, we observe that defendant correctly points out that plaintiff failed to substantiate any award for special damages. There are no receipts, invoices or other documentary evidence to substantiate plaintiff's claim for cleaning expenses, or having to dine out or additional cleaning of the apartment.[2] We conclude that plaintiff's testimony alone was insufficient to establish with legal certainty the amount of expenses incurred. See, Keaty v. Moss Motors, 93-1452, 1453 (La.App. 3rd Cir. 6/1/94), 638 So.2d 684, writ denied, 94-2211 (La. 11/11/94), 644 So.2d 399. Furthermore, there is no medical testimony *529 to substantiate her claim to an aggravated asthma condition.
Although plaintiff failed to prove any special damages,[3] we conclude that there is sufficient evidence to substantiate the $1,500.00 award for mental anguish and inconvenience. Defendant argues that, in this breach of contract case, she is not entitled to nonpecuniary damages. We disagree.
Partially because of the Supreme Court's decision in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976),[4] the legislature, in 1984, enacted Civil Code article 1998.[5] That article appears in Chapter 8 of Title IV (Conventional Obligations or Contracts) of Code Book III, and provides as follows:
"Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee."
In Young v. Ford Motor Co. Inc., 595 So.2d 1123, 1133 (La.1992), our Supreme Court interpreted article 1998 to mean that "if it can be established that the obligee intendedand if the nature of the contract supports this contentionto gratify a significant nonpecuniary interest by way of the contract, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then the requirements for recovery of nonpecuniary damages are satisfied." The court concluded that with the adoption of article 1998, the legislature made clear that nonpecuniary damages are recoverable in the situation where obligees enter a contract to gratify both pecuniary and nonpecuniary interests.[6]
Cases subsequent to Young have permitted nonpecuniary (mental anguish) damages in redhibition actions for the sale of a defective sportfishing boat, Poche v. Bayliner Marine Corp., 93-741 (La.App. 5th Cir. 2/9/94), 632 So.2d 1170, and for the breach of a contract to build a new home, Mayerhofer v. Three R's Inc., 597 So.2d 151 (La.App. 3rd Cir.1992), writ denied, 600 So.2d 680 (La. 1992). In Mayerhofer, the court went into detail concerning why the construction of a new home had both pecuniary and nonpecuniary benefits to the plaintiff, while the court in Poche merely concluded that the purchase of a sport fishing boat satisfies the requirements of article 1998.
In Gennings v. Newton, 567 So.2d 637, 642 (La.App. 4th Cir.1990), without referring to article 1998, we held that a tenant is entitled to damages for uninhabitable premises, including mental anguish, anxiety, and worry. See also, Smith v. Castro Brothers Corporation, 443 So.2d 660 (La.App. 4th Cir.1983), writs denied, 446 So.2d 1229, (La.1984); 446 So.2d 1231 (La.1984).
We hold that, as a matter of law, a tenant is not precluded from seeking nonpecuniary damages for breach of a contract of lease, and that under the facts and circumstances of this case, the award of $1,500.00 for mental anguish is supported by the record.
*530 A lease for residential purposes includes, as one of its objects, the enjoyment of habitable living quarters, arguably a nonpecuniary interest. More specific, however, is the enjoyment the tenant receives when entertaining guests, unquestionably the gratification of a nonpecuniary interest. In the instant case, plaintiff's testimony and the photographs in evidence show the deplorable conditions created by the various plumbing problems. The testimony of Monica Dugais, not only corroborates the uninhabitable condition of the premises, but also shows the unpleasantness of visiting plaintiff there. We are satisfied plaintiff proved that she is entitled to damages for mental anguish and inconvenience.
Defendant argues that it cannot be responsible for the defective condition of its premises because plaintiff failed to provide written notice of same as per the lease terms and La.R.S. 9:3221. We disagree. A landlord cannot escape its responsibility to repair defects where it had actual notice of those defects, even though the notice is not in writing. Smith v. Jack Dyer and Associates, Inc., 633 So.2d 694 (La.App. 1st Cir.1993). The evidence in the instant case conclusively shows that defendant was well aware of the problems in plaintiff's apartment and failed to correct them. Furthermore, defendant cannot rely on plaintiff's failure to mitigate damages by making her own repairs where defendant consistently made no effort to correct the problems.
Finally, we reject plaintiff's request for return of her security deposit, plus attorney fees and penalties. Plaintiff did not offer documentary evidence to establish the total deposit paid by her to defendant other than her own self-serving letter to defendant written several months after she vacated the apartment. Furthermore she is not entitled to penalties and attorney fees because they are not authorized by law.
Defendant argues that several of the trial judge's evidentiary rulings were erroneous. Those rulings included: 1) denying defendant the right to question plaintiff about external causes of her stress; 2) admitting into evidence plaintiff's uncertified medical bill; 3) allowing plaintiff to testify as to her expenses without certainty or corroborating evidence; and 4) allowing plaintiff to introduce a letter from plaintiff to defendant which allegedly contained inadmissible hearsay, cumulative and unsubstantiated statements. We find no error in these rulings.
For the reasons stated above, we affirm the trial court judgment.
AFFIRMED
NOTES
[1] The automatic renewal clause maintained the lease's written terms although on a month to month basis.
[2] The receipts and cancelled checks attached to plaintiff's brief filed with this court cannot be considered, because they were not introduced into evidence during trial, Lozes v. Lozes, 542 So.2d 603 (La.App. 5th Cir.1989).
[3] Plaintiff's argument that she should have been awarded exemplary or punitive damages is also without merit. Exemplary or punitive damages are not allowed under Louisiana law unless expressly authorized by statute. International Harvester Credit Corporation v. Seale, et al, 518 So.2d 1039 (La.1988).
[4] Meador held that nonpecuniary damages were permissible in breach of contract cases where a principal object of the contract was the intellectual gratification of the obligee. The court's holding was premised on its interpretation of Civil Code article 1934(3), prior to the 1984 obligations revisions to the Civil Code.
[5] The code articles dealing with obligations underwent major revisions in 1984.
[6] Justice Calogero, who authored Young v. Ford Motor, Inc. was of the personal opinion that although different interpretations of Meador by commentators suggested otherwise, the legislative result of article 1998 was consistent with the holding of that case.