JUDE G. GRAVOIS, Judge.
| ^Defendant, Gasper John Palazzo, Jr., L.L.C., has appealed a trial court money judgment in favor of plaintiffs, Ronald Graci and Sunkissed Tanning Studios, L.L.C., in a suit over a lease dispute. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

On January 12, 2004, plaintiff, Ronald Graci,[1] as lessee, and defendant, as lessor, entered into a lease of an approximately 1,500 square foot retail unit in a shopping center known as the Colonnadas Plaza, *743 located in Slidell, Louisiana. The lease commenced on March 1, 2004 and was for a term of three years, with lessee being granted two three-year renewal options.[2] At the time the lease was confected, the premises consisted of a glass store front, two side walls, a back wall, and a functioning bathroom. Plaintiff subsequently constructed, at his own expense, a tanning salon “build out” within the premises, including twelve small Rtanning rooms, into at least ten of which plaintiff placed tanning beds. The tanning salon was operated under the name “Sunkissed Tanning Studios.”
On August 29, 2005, the shopping center was severely damaged by Hurricane Katrina. Defendant cleaned up and gutted out the entire shopping center, including plaintiffs unit. On September 26, 2005, plaintiff notified defendant that he wished to exercise his option under the lease to have the premises reconstructed by defendant. Defendant commenced but did not complete the reconstruction.
On October 6, 2006, defendant filed an eviction proceeding against plaintiff in Sli-dell City Court. In response, plaintiff filed for a temporary restraining order against defendant in the 22nd Judicial District Court to enjoin the eviction. The trial judge in the 22nd Judicial District Court proceeding granted the temporary restraining order. The parties subsequently agreed to indefinitely continue the preliminary injunction hearing pending settlement negotiations. However, on January 29, 2007, defendant filed a rule to evict plaintiff in the 22nd Judicial District Court proceeding, which was granted on March 14, 2007. Plaintiff did not appeal the judgment of eviction.
On March 23, 2007, plaintiff filed the instant suit against defendant in the 24th Judicial District Court, requesting damages for breach of contract and wrongful eviction.[3] In response, defendant filed an exception of lis pendens, which was denied by the trial judge. Defendant then filed a reconventional demand against plaintiff seeking rent, penalties, and attorney’s fees. Defendant later filed a motion for partial summary judgment, arguing that plaintiffs claims were res judicata because they were disposed of in the 22nd Judicial District Court proceeding. The trial court agreed with defendant and dismissed all of plaintiffs |4claims with prejudice. In a subsequent Motion for Summary Judgment and/or Judgment on the Pleadings, defendant prevailed and was awarded unpaid rent, late charges, and attorney’s fees. Plaintiff appealed these judgments, which were reversed by this Court and the matter was remanded for further proceedings. Graci v. Gasper John Palazzo, Jr., L.L.C., 09-347 (La.App. 5 Cir. 12/29/09), 30 So.3d 915, writ denied, 10-0248 (La.4/9/10), 31 So.3d 394.
On remand, a four-day bench trial on the merits of the matter was conducted. At trial, plaintiff testified that when he entered into the lease, the premises consisted of the store front, three walls, and a bathroom which contained bathroom fixtures and handicapped rails. He added a “build out” within the premises, consisting of twelve individual tanning rooms with carpeting, a reception area with cabinets, and Italian tile in the hallway and reception area. He estimated that he spent *744 approximately $72,000 in constructing the “build out.” He also purchased ten tanning beds and placed them into ten of the tanning rooms. An apparatus for performing spray-on tans was placed into one of the other tanning rooms. All of this equipment was placed in the building after plaintiffs “build out” was completed.
After Katrina, defendant cleaned up the destruction caused to the shopping center by the storm and gutted out the individual rental units, including plaintiffs unit. It was plaintiffs impression that under the lease, defendant had the obligation to repair his rental unit to its pre-hurricane condition. On September 26, 2005, plaintiff sent defendant a letter giving him written notice as required by the lease requesting that defendant reconstruct plaintiffs rental unit to the same condition as it existed prior to the hurricane pursuant to Paragraph 26 of the lease, and reserving his rights under the lease. Plaintiff testified that after the shopping center was gutted out, only minimal repairs were made to his unit by defendant. |sStarting in September 2005, plaintiff stopped paying rent due to the damages to the premises caused by the hurricane. In February 2006, plaintiff received a letter from defendant stating that rent would commence anew on March 1, 2006. Plaintiff testified that although his rental unit had not been repaired as of that time, he nevertheless paid the rent for April, May, June and July 2006 because he wanted defendant to know that he intended to reopen his business. He emphasized that had he not intended to reopen the business, he would not have paid this rent. He continued to write letters to defendant requesting that the premises be returned to its pre-hurricane condition.
In May 2006, plaintiff met with defendant’s general contractor, Mike Guidry, who was responsible for repairing the shopping center. Plaintiff testified that he informed Mr. Guidry of the type of doors that needed to be installed within his unit, including the doors to the tanning rooms, the paint colors for the rooms, and where replacement cabinets for the reception area could be purchased. It was plaintiffs impression that Mr. Guidry was not getting cooperation from defendant. Because the repairs to his unit were not performed, plaintiff discontinued paying rent in August 2006. Pictures of plaintiffs unit introduced into evidence indicate that even as of October 2006, new bathroom fixtures had not been installed, sheetrock work had not been completed, the floor tile had not been cleaned, the carpet in the tanning rooms had not been replaced, and air-conditioning and electrical work had not been completed. Obviously, as of that time, plaintiffs unit had not been restored to its pre-hurricane condition. In plaintiffs view, pursuant to the lease, rent payments were abated because the repairs were not completed; however, he was evicted for non-payment of rent on March 14, 2007.
Plaintiff testified that he spent approximately $18,000 in advertising during the time he operated the tanning salon. This resulted in an increase in the number |fiof clients visiting the salon. Due to defendant’s failure and refusal to repair the premises, plaintiff was unable to reopen the salon and claims that he lost future anticipated profits. He explained that defendant’s failure and refusal to repair the premises caused him significant stress. He described the entire ordeal as a “nightmare.”
Gasper Palazzo testified as owner of the L.L.C. that bears his name. Several properties owned by Mr. Palazzo were damaged by Hurricane Katrina. He was unable to give specific information as to the repairs done to the Colonnades Plaza *745 shopping center in general and to plaintiffs rental unit in particular. In Mr. Pa-lazzo’s view, his only obligation under the lease was to repair the premises to the condition it was in prior to plaintiffs original “build out.” Contrary to the pictures introduced into evidence showing that the bathroom had no fixtures and no door, no molding or trim work, Mr. Palazzo insisted that to the best of his knowledge, plaintiffs unit had been repaired to its condition prior to plaintiffs original “build out” by March 2006 and was available for occupancy as of that date. He contended that all of the electrical and air-conditioning work was completed as of that time as well. In later testimony, however, Mr. Palazzo admitted that the bathroom fixtures had not been installed, but claimed that it would have only taken a short period of time, estimated to be not more than fifty minutes, to install them. Mr. Palazzo further testified that the other tenants rebuilt their own “build outs” at their own expense. He testified that plaintiff was asked, but refused to furnish information as to paint colors, carpeting and doors so that his new “build out” could be completed. Mr. Palazzo admitted, however, that he did not intend to pay for the construction of plaintiffs new “build out.”
Mr. Palazzo further testified that the lease agreements for all units in the shopping center required the tenants to pay common area maintenance fees, which 17included payment for flood and hazard insurance policy premiums. The common area maintenance fees for plaintiffs unit, designated as “additional rent” in the lease, averaged approximately $250 per month. Mr. Palazzo received approximately $355,000 in insurance proceeds for damages to the shopping center caused by the hurricane, including approximately $306,000 from the flood insurer. The limit on the flood insurance policy was $500,000, but he was unable to collect the full amount of the policy. The funds received from insurance were not sufficient to fully repair the shopping center. He had to borrow approximately $300,000 to complete the repairs. Documents introduced into evidence indicate that the flood insurer paid defendant $34,697 for damages caused by the hurricane to the 1500 square foot unit of the shopping center leased to plaintiff. These documents indicate that this payment included costs to rebuild the interior walls of plaintiffs unit, including the tanning rooms, and replace the twelve doors and hardware in the interior rooms, replace the carpet in the rooms, and clean and re-grout the ceramic tile. Mr. Palazzo admitted that he had no reason to dispute these documents.
Mr. Palazzo acknowledged that plaintiff paid rent for April, May, June and July of 2006. He told plaintiff to get together with Mr. Guidry, whom he had hired as the general contractor to complete the repairs to the shopping center, including plaintiffs unit. Mr. Palazzo testified that because plaintiff did not furnish Mr. Gui-dry with information to complete the repairs, such as door and hardware style, paint colors, and flooring material, he concluded that plaintiff did not intend to reopen his business at the shopping center.
Mr. Palazzo denied knowledge of a letter plaintiff claims to have sent to him requesting that the property be repaired. In his view, plaintiff did not want to return to the premises to reopen his business because the business was not | ^profitable. According to Mr. Palazzo, two later tenants occupied the premises as tanning salons and neither of those endeavors was profitable. However, evidence was introduced to show that the second tenant sold the business to the third tenant, which included the sale of equipment for $85,000 and the sale of the “good will” of the business for $25,000.
*746 Mr. Guidry testified that he was hired by defendant to reconstruct the shopping center after the hurricane, which caused forty-six inches of water to enter into the rental units. Most of the damage to the shopping center was caused by flood waters. An invoice was introduced showing a charge of $435,175 for work supposedly done by Mr. Guidry on the shopping center. Mr. Guidry denied that he was paid this amount, but was unable to state exactly how much he was paid by defendant for work done on the shopping center. He claimed that he no longer had any of those records. He was unsure if he or someone else prepared this invoice. The invoice indicates that charges were made for replacement and repairs to plumbing, and electrical and air-conditioning equipment in the shopping center, but Mr. Guidry denied performing these repairs. Rather, most of his work consisted of reinstalling the walls and hanging sheetrock. Other repairs were made by other contractors hired by defendant.
Mr. Guidry explained that the work on plaintiffs unit was not completed because he and defendant did not know if plaintiff was returning to reopen his business. He did not know if the plumbing fixtures were installed in plaintiffs unit. Mr. Guidry indicated that he stopped working on plaintiffs unit because Mr. Palazzo stopped paying him. He admitted to meeting with plaintiff regarding repairs to plaintiffs unit, but was unsure if he discussed paint colors with plaintiff, and generally could not remember the nature and extent of their conversations during the meeting.
InAt the conclusion of the trial, the judge took the matter under advisement. He subsequently rendered judgment in favor of plaintiff in the amount of $100,250, representing an award of $75,000 for the estimated cost of plaintiffs original “build out,” $5,250 in lost rental payments, and $20,000 for mental anguish. Defendant filed this appeal following the denial of his motion for a new trial.

ASSIGNMENTS OF ERROR NOS. ONE, TWO AND THREE

1. The trial court erroneously calculated unjust enrichment damages as the total cost of Grad’s improvements in a manner that was totally unsupported by the facts.

2. The trial court’s award of damages for unjust enrichment and emotional distress based on “wrongful eviction” is contrary to law.

8. The trial court erred in determining that the tenant’s “improvements, ” which Gi"aci was obligated to repair were part of the “leased premises, ” leased to Grad by Palazzo L.L.C.

As these assignments of error are interrelated, they will be discussed together. In these assignments, defendant argues that plaintiff was not entitled to keep the improvements (plaintiffs original “build out”), or be paid the value thereof, because the lease clearly provided that upon expiration of the lease, all improvements would become the property of defendant, as lessor. Defendant contends that pursuant to the lease, plaintiff (rather than defendant) had the responsibility of restoring the improvements in his unit after the hurricane. He further argues that plaintiff never purchased replacement equipment for the salon, i.e., tanning beds, so the incomplete repairs to the premises was not the reason plaintiff did not reopen his business.
In support of this position, defendant references Paragraph 9 of the lease which provides, in pertinent part:
Any alterations, additions, improvements and fixtures installed or paid for by the Lessee upon the interior or exte *747 rior of the Demised |inPremises, other than unattached moveable trade fixtures and decorations, shall upon the expiration or earlier termination of this lease become the property of the Lessor.
Defendant contends that this provision of the lease is applicable because the lease was lawfully terminated due to plaintiffs nonpayment of rent.
Defendant further argues that he had no obligation to repair plaintiffs original “build out” because of Paragraph 14 of the lease, which provides:
Lessor shall not be required to make any repairs or improvements of any kind upon the Demised Premises except for necessary structural repairs. Lessee shall at its own cost and expense, take good care and make necessary repairs to the interior of the Demised Premises, and the fixtures and equipment therein and appurtenances thereto, including the exterior and interior windows, window frames, doors, door frames and entrances, store fronts, signs, showcases, floor covering, non-structural interior walls, columns and partitions; lighting, electrical equipment, plumbing and sewerage facilities and equipment; and the heating and/or air conditioning equipment servicing the Demised Premises.
Plaintiff argues that because the lease provided that at the expiration of the lease defendant would own the improvements made by plaintiff to his unit at the commencement of the lease (plaintiffs original “build out”), defendant had the responsibility of repairing the premises to its pre-hurricane condition. Plaintiff contends that the trial court properly awarded damages for wrongful eviction. He contends that the evidence proved that he paid approximately $75,000 for the original “build out,” and although defendant received insurance proceeds to pay for the repairs, he used the money to pay for the mortgages on the premises that were past due. Plaintiff concludes that in order to restore plaintiffs unit to its “pre-lease condition,” the trial court correctly found that the value of plaintiffs original “build out,” plus overpaid rent, was the appropriate measure of damages.
Paragraph 26 of the lease, which deals with the procedure to be followed by the parties in the event of destruction of the premises by reason of fire, tornado, windstorm or other casualty, provides in pertinent part:
^DESTRUCTION: Lessor shall, during the continuance of this lease, at Lessor’s own cost and expense, carry adequate insurance, insuring the building against loss by reason of fire, tornado, windstorm or other casualty, and shall furnish Lessee with the evidence of such insurance upon request.
In case the leased premises are rendered wholly unfit for the purpose for which they are leased, by fire or other casualty, the parties hereto shall have the following options:
26.1 Lessee shall have the right to require that the leased premises be reconstructed, at the expense of the Lessor, in substantially the same manner as the same existed prior to said casualty. This option shall be exercised by Lessee, by written notice to Lessor, within thirty (30) days after the date of said casualty, and, upon the exercise thereof by Lessee, the rent shall abate from the date of said casualty until the completion of the reconstruction of said leased premises, whereupon this lease shall continue in full force and effect for the balance of the term of the lease and upon the same terms and conditions as herein contained....
If, under the above options, the lease premises are rebuilt, the work of re *748 construction shall be proceeded with as speedily as possible.
Our review of the evidence introduced at trial indicates that plaintiff properly and timely notified defendant that he wished to have the premises repaired to its condition prior to the casualty that destroyed the premises. The destruction provision in the lease (Paragraph 26.1) clearly provides for the rental payments to be abated from the date of the casualty until the date the repairs are completed. At the time plaintiff was evicted, the evidence is clear that plaintiffs unit was not returned to the condition it had been in prior to the hurricane. In fact, based on photos introduced that clearly show that defendant failed to have the bathroom fixtures installed in plaintiffs unit, it is clear that plaintiffs unit was not returned to the condition it was in prior to construction of plaintiffs original “build out.” Thus, defendant’s argument that the original “build out” became his property because the lease was lawfully terminated by the eviction is without merit. Plaintiff invoked his right to have the premises repaired by defendant to its pre-hurricane condition and defendant failed to comply with his obligation as lessor to 112do so. Paragraph 14 of the lease is not relevant to repairs done after destruction of the premises caused by a casualty; rather, Paragraph 14 covers routine up-keep, and ordinary, routine repairs in the absence of destruction by a casualty.
Paragraph 26 of the lease, which applies to destruction of the premises as a result of a casualty, requires that defendant, as lessor, insure the entire premises, including the value of plaintiffs “build out,” against casualty loss. Although defendant claimed that he had sufficient insurance coverage on the building, he readily admitted that he received inadequate funds from the insurer to repair the premises. Further, documents introduced into evidence show that the flood insurer paid defendant at least some proceeds that were intended to cover the cost of repairing plaintiffs original “build out” in plaintiffs rental unit. Defendant does not dispute that he received $84,697 from his insurer to cover the cost of some of the repairs to the interior of plaintiffs unit.
In his reasons for judgment, the trial judge gave the following explanation for his judgment:
... [I]t seems clear that defendant breached the lease between them by failing to reconstruct the leased premises in substantially the same manner as the same existed prior to said casualty (whether that “manner” meant before or after plaintiffs buildout) as “speedily as possible.” Since defendant breached the contract, furthermore, although plaintiffs buildout would have become the property of defendant at the time of the termination of the lease, defendant was unjustly enriched by obtaining the value of the buildout under these circumstances.
In denying defendant’s motion for a new trial, the trial court explained that the amount awarded included the $75,000 plaintiff paid for his original “build out” and $5,250 in undue rental payments made by plaintiff. Our review of the record indicates that although plaintiff sought damages for lost profits, the trial court stated that it was denying plaintiffs claims for “business interruption past, present, 11?and future economic loss.” Thus, the award of $75,000 was based solely on the value of plaintiffs original “build out.”
In his suit, plaintiff claimed damages from defendant for unjust enrichment under La. C.C. art. 2298, which provides, in pertinent part:
A person who has been enriched without cause at the expense of another per *749 son is bound to compensate that person. The term “without cause” is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The unjust enrichment remedy is applicable, however, only when there is no other remedy available. Walters v. MedSouth Record Mgmt., LLC, 10-0351 (La.6/4/10), 38 So.3d 245, 246. In his petition, plaintiff alleged, among other claims, that defendant breached the lease and he could not reopen his business because of defendant’s failure to rebuild the premises. Thus, plaintiff alleged that he sustained damages for defendant’s alleged breach of the lease. Accordingly, he is not entitled to damages for unjust enrichment because another remedy was available to him for breach of the lease.
Although plaintiff is not untitled to recover damages from defendant under the theory of unjust enrichment, he claims that La. C.C. arts.1994 and 1995 provide him with an alternative avenue of recovery of his damages resulting from defendant’s breach of the lease. La. C.C. art.1994 provides:
An obligor is liable for the damages caused by his failure to perform a conventional obligation.
A failure to perform results from nonperformance, defective performance, or delay in performance.
Further, La. C.C. art.1995 provides:
Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.
| ¶/These codal articles have been used to award damages to a lessee for breach of an obligation by the lessor under a lease. See, Pelleteri v. Caspian Group. Inc., 02-2141 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1238-41. Thus, in accordance with these codal articles, upon review of the record before us, we find that defendant (the obligor) is liable to plaintiff (the obli-gee) for the damages caused to plaintiff (the $75,000 cost of plaintiffs original “build out” that plaintiff was deprived use of for the remaining duration of his lease[4] and the undue rental payments made by plaintiff) by defendant’s failure to perform his obligation (failing to reconstruct plaintiffs rental unit to the condition it was in immediately prior to the hurricane) under a conventional obligation (the lease agreement between the parties). In other words, had defendant complied with his obligation under the lease to repair plaintiffs rental unit to the condition it was in prior to the hurricane, plaintiff would have had the full use and enjoyment of his original $75,000 “build out” for the remainder of the lease (the remainder of the original three-year term of the lease and presumably the two extended three-year terms of the lease), even though those improvements originally constructed by plaintiff would have become the property of defendant at the termination or cancellation of the lease.
The trial court awarded $75,000 to plaintiff based on the approximate cost of plaintiffs original “build out” that plaintiff was deprived the use and enjoyment of as a result of defendant’s breach of the lease.[5] Contrary to defendant’s assertions, we find *750 that the record clearly supports plaintiffs $75,000 award, which for the foregoing reasons is hereby affirmed.
Further, the record is clear that plaintiff paid at least $5,250 in rental payments and common area maintenance fees during the period when plaintiffs |1firental unit was uninhabitable.[6] Consequently, the trial court’s award of $5,250 in undue rental payments made by plaintiff was proper and is also hereby affirmed.
Finally, the trial court awarded plaintiff damages in the amount of $20,000 for emotional distress. A tenant is entitled to damages for uninhabitable premises; these damages include mental anguish. Ganheart v. Executive House Apartments, 95-1278 (La.App. 4 Cir. 2/15/96), 671 So.2d 525, 529, writ denied, 96-1337 (La.9/3/96), 678 So.2d 554; Gennings v. Newton, 567 So.2d 637, 642 (La.App. 4th Cir.1990). Plaintiff testified that he fully intended to reopen his business and made the rental payments as requested by defendant for April, May, June and July 2006, although repairs to the premises had not been completed during that time. Clearly, plaintiff would not have made these rental payments had he not intended to reopen his business. He also explained that he had contacted the manufacturer of the tanning beds and was going to replace the lower portions of the beds, as the upper portions were not damaged by the flood water. Plaintiff specifically testified that this whole event “absolutely” caused him a great deal of stress, and that the mental anguish associated with defendant’s failure to reconstruct his unit, his inability to operate, the loss of his original “build out” costs, and the eviction along with this protracted litigation which has been going on since 2007 “has been a nightmare” to him.
An award of non-pecuniary damages for breach of a lease is reviewed on appeal under the manifest error standard. See, Ganheart v. Executive House Apartments, supra. Upon review, we find that the award for mental anguish in this 11ficase is fully supported by plaintiffs testimony and the documentary evidence introduced, is not manifestly erroneous, and is accordingly also hereby affirmed.
For the foregoing reasons, defendant’s first three assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. FOUR AND FIVE

Í The trial court should have given res judicata effect to the ruling of its sister court in St. Tammany Parish on all issues that already had been decided by that court when that St. Tammany court denied Grad’s preliminary injunction.

5. This Court should reverse the judgment of the trial court and reinstate the trial court’s previous summary judgment in favor of Palazzo L.L.C.

In these assignments, defendant contends that in order to grant the eviction, the 22nd Judicial District Court judge had to find that defendant reconstructed the leased premises in the manner that was required under the lease. Defendant argues that in the 22nd Judicial District Court proceedings, plaintiff argued that he *751 was entitled to have the leased premises reconstructed at defendant’s expense and that no rent was owed until the reconstruction was completed. Defendant reasons that by denying the injunction requested by plaintiff and by granting the eviction, the 22nd Judicial District Court ruled that the premises were repaired as required by the lease and defendant was thus not required to rebuild plaintiffs original “build out.”
Upon review, we find that these same arguments were made and completely rejected in the first appeal to this Court in this matter, Graci v. Gasper John Palazzo Jr., L.L.C. 09-347 (La.App. 5 Cir. 12/29/09), 30 So.3d 915, writ denied, 10-248 (La.4/9/10), 31 So.3d 394, to-wit:
Plaintiffs did not have the opportunity to argue their claims during the eviction proceeding in the 22nd Judicial District Court. Plaintiffs could not present their claims for damages and mitigation during that summary proceeding because these claims must be adjudicated during an ordinary proceeding. The trial court in the 22nd Judicial District Court did make the determination that those claims 117were not valid as to why Plaintiffs should not have delivered the property to Defendant. However, that trial court did not rule as to whether or not Plaintiffs were entitled to damages or whether Defendant could have mitigated his damages. As a result, the issues raised by Plaintiffs in the 24th Judicial District Court proceeding were not barred by res judicata.
Id. at 918.
This Court’s prior decision is the law of the case on this issue. Accordingly, these assignments of error are also without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court under review in favor of plaintiff is affirmed. All costs of this appeal are assessed to defendant.

AFFIRMED

. The lease was in the name of Ronald Graci. The petition was filed in the name of Ronald Graci d/b/a Sunkissed Tanning Studios, L.L.C. Ronald Graci and Sunkissed Tanning Studios, L.L.C. will be referred to herein collectively as plaintiff.

. Lessee’s right to exercise the renewal options were subject to lessee being in full compliance with all of the terms and conditions of the lease when the renewal options were to be exercised and called for cost-of-living increases in the rental amounts to be paid to lessor.

. In a supplemental and amending petition for damages, plaintiff also claimed damages resulting from unjust enrichment to defendant under La. C.C. art. 2298.

. The record indicates that plaintiff spent approximately $75,000 to construct his original “build out.”

. The trial court rejected plaintiff’s claim for loss profits and plaintiff has not appealed that finding.

. Although the parties seemed to have clearly agreed on the record that plaintiff paid at least four months’ rent at $1,500 per month (plus at least three payments of approximately $250 per month for common area maintenance fees) for several months when plaintiff's unit was clearly uninhabitable, the trial court only awarded plaintiff three months of undue rent paid, plus three months of undue common area maintenance fees paid. Since plaintiff did not appeal the trial court judgment under review, or answer the appeal, we are without authority to correct the judgment in this regard.