I iBOWES, Judge.
Appellant, Wendy Lynn Osborne (hereinafter “Osborne”), appeals a judgment of the district court denying her motions for new trial and to annul a judgment in favor of plaintiff/appellee, Matchmaker International of New Orleans (hereinafter “Matchmaker”). We affirm.

FACTS

In March of 1993, Matchmaker sued a number of former employees, including appellant, seeking a restraining order prohibiting them from operating an “introduction” or dating service in violation of an employment contract. The contract contained a non-competition agreement prohibiting |2employees from engaging in a competitive business within a radius of fifty miles, for two years after termination of employment, and further prohibiting them from disclosing methods of operation, client lists, and the like. The defendants, including Osborne, were former employees whom Matchmaker alleged were violating the contract.
In April of 1993, the attorneys for Matchmaker and Osborne appeared in court and dictated into the record an agreement which appeared to settle the litigation between Matchmaker and Osborne. The attorney for Osborne stated on the record:
Judge, we’re going to dictate this into the record. I guess ya’ll will get the transcript or something. Let’s see if we can do this now. We want to have a complete understanding. We know what we want to do. We’ve settled out. We’ve reached an agreement here. And maybe George, you can dictate it into the record and we’ll make any corrections or modifications af-terwards.
Following the recitation of the terms of the settlement, the attorney for Osborne stated:
What we’d like to do is prepare the judgment and prepare it to me (sic). I’ll *688 send a copy to Wendy to sign and if for some reason we disagree ...
THE COURT: Yeah, there may be some terminology that could be improved.
No corrections or modifications were made or suggested by Osborne.
|aIn March, 1994, a judgment styled a “consent judgment” was submitted by Matchmaker and signed by the trial court, which judgment incorporated, almost verbatim, the terms of the compromise recited in court — however, neither plaintiff nor defendant signed the written judgment.
Within the applicable delays, counsel for Osborne[1] filed a motion for new trial and a motion to annul judgment. Following a hearing, the trial court denied these motions; it is from the judgment denying the motions that plaintiff appeals.

ANALYSIS

Generally, an order denying a motion for new trial is not appealable absent a showing of irreparable injury. La.C.C.P. art. 2083. Scheffler v. Scheffler, 453 So.2d 960 (La.App. 5 Cir.1984). However, when an ordinarily nonappealable issue is raised in conjunction with other appealable issues, as here, it may be reviewed for the sake of judicial economy and justice. Mediamolle v. K-Mart Discount Stores, 494 So.2d 1187 (La. App. 5 Cir.1986). Gennings v. Newton, 567 So.2d 637 (La.App. 4 Cir.1990).
Under the Louisiana Code of Civil Procedure, a party is entitled to a new trial when (1) the verdict or judgment appears clearly contrary to the law and the evidence; (2) when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained Ubefore or during the trial; or (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. La.C.C.P. art. 1972.
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. La.C.C.P. Art. 1973.
The written judgment in question tracks the compromise agreement dictated into the record, with no substantive or substantial changes whatsoever. Clearly, there are no peremptory grounds for a new trial under La.C.C.P. article 1972. Similarly, because the written judgment is practically identical to the transcript, we see no discretionary grounds on which the trial court should have granted a new trial under La.C.C.P. article 1973. This assignment of error is without merit.
With regard to the motion for nullity, we note that La.C.C.P. Arts. 2002 and 2004 permit an action for nullity to be brought as follows:
Art. 2002. Annulment for vices of form; time for action
A final judgment shall be annulled if it is rendered:
(1) Against an incompetent person not represented as required by law;
(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken; or
(3) By a court which does not have jurisdiction over the subject matter of the suit.
| gExcept as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time.
Art. 2004. Annulment for vices of substance; peremption of action.
A final judgment obtained by fraud or ill practices may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
Appellant clearly has no action for nullity under La.C.C.P. art. 2002. Furthermore, she has not alleged fraud nor ill practice as grounds for the nullity action. She does allege, however, that at the time the compromise judgment was read into the record, it was understood that all of the ele *689 ments therein were to be reduced to writing and reviewed, “and, if properly formulated,” signed by defendant/appellant; that the “Consent Judgment” was not circulated to her and “... In an attempt to circumvent this necessity, plaintiffs have materially altered the substance of the agreement and have abrogated the underlying issues formulated and concluded in the original proceedings held”; Ms. Osborne then continues, alleging that without notice, consent or authorized signature of the defendant, the attorney for Matchmaker, submitted the consent judgment to the court. We construe these allegations as an attempt to formulate a cause of action for fraud and ill practice.
leLa.C.C. art. 3071 provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
In Succession of Morvant, 578 So.2d 549 (La.App. 3 Cir.1991), the court noted:
Whether reduced to writing or recited in open court and transcribed, the purpose of LSA-C.C. Art. 3071 is to insure the proper proof of extrajudicial agreements. Troxclair v. Parish of St Charles, 450 So.2d 759 (La.App. 5th Cir.1984); Martin, [v. Holzer Sheet Metal Works, Inc., 376 So.2d 500 (La.1979)], supra. It follows, then, that if the agreement is recited in open court and is capable of transcription from the record, the agreement will be treated as though it was a written contract.
Under La.C.C. Art. 3071, supra, Matchmaker had the right to enforce the recited compromise agreement which was dictated into the record in open court although it later chose to write its substance in a more convenient form, i.e., the written judgment. As previously observed, the written judgment, styled as a “Consent Judgment,” adds nothing to nor does it take away anything from the compromise recited in open court; in point of fact, it 17reiterates each part of the compromise almost exactly.[2]
Therefore, we fail to see, under these circumstances, how the judgment might be construed by appellant as having been obtained through fraud or ill practice. Neither can we construe the comments of counsel as making the settlement “tentative,” as Osborne suggests. If there are elements of the agreement not covered in the compromise, the settlement does not extend to those issues.
The law considers that a settlement extends only to the claims which the parties to the agreement intended to compromise. Cutrer v. Illinois Central Gulf Railroad Co., 581 So.2d 1013, 1018 (La.App. 1st Cir. 1991). Thus, “only the differences which appear clearly to be comprehended in them by the intention of the parties” are regulated by transactions or compromises.
Tolis v. Board of Sup’rs of Louisiana State University, 602 So.2d 99 (La.App. 4 Cir. 1992).
The differences recited in the compromise and reduced to written judgment were obviously intended to be compromised and settled by the parties. Defendant does not suggest, nor do we discern, how the terms of the settlement and/or the judgment are incorrect or prejudicial. To the extent that all matters were not covered and all differences not settled in this particular recitation and the written judgment which tracked it, the defendant may have other avenues of recourse or enter into another compromise Isagreement. (We note in this regard that both the dictated compromise and the written judgment expired by their own terms on *690 January 20, 1995). However, we find no reason to set aside the written judgment, insofar as it is a reduction to writing of the dictated compromise.
For the foregoing reasons, the judgment on appeal is affirmed. Appellant is assessed with all costs of this appeal.
AFFIRMED.

. Counsel for Osborne on appeal is not the same attorney who represented Osborne in the trial court.

. In the written judgment, the word "non-heterosexual” was substituted for the word "homosexual" used in the dictated compromise.