SUCCESSION OF JOYCE HYMEL GETTYS

NO. 24-C-570

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Wiseman
First Deputy, Clerk of Court

December 18, 2024

Linda Wiseman
First Deputy Clerk

**IN RE** JOY GETTYS NAQUIN AND THE SUCCESSION OF JOYCE HYMEL GETTYS

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE STEPHEN D. ENRIGHT, JR., DIVISION "N", NUMBER 825-250

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and John J. Molaison, Jr.

**WRIT DENIED**

The relator, Joy Gettys Naquin, seeks review of the October 16, 2024, judgment that denied her motion for a new trial. We deny this writ application for the following reasons.

**PROCEDURAL HISTORY**

The relator and her brother-in-law, Claytus Joseph Plaisance, III, are testamentary co-executors of the estate of the relator's mother, Joyce Hymel Gettys. On February 14, 2022, the co-executors petitioned to administer the succession. During the succession, a dispute arose over the status of (1) a Cartier watch owned by the decedent that was purportedly donated to Ms. Naquin, (2) a purported $50,000 donation made by the decedent to Ms. Naquin, and (3) a payable on death account naming Ms. Naquin as beneficiary. The co-executor, Mr. Plaisance, asserted these three items belonged to the decedent's estate. On

September 22, 2023, Ms. Naquin filed a Motion for Declaratory Judgment to resolve the dispute over these three items.

At the December 12, 2023 hearing on the motion, Ms. Naquin's counsel stated that "after much discussion the parties have agreed to resolve all succession issues remaining open. Including the three items that we are here for today." Counsel then read the following into the record:

> Number one with regard to the TOD account, the fifty thousand dollars and the Cartier watch we have agreed to settle as follows: Joy - - they are going to be split in half. Joy shall receive fifty percent of the value of those three items. The estate shall receive fifty percent of the value of those three items. Joy shall keep the Cartier watch in her possession.

Counsel went on to state that items of jewelry listed on an affidavit signed by the decedent before her death would be given to Joy and her sister Lynn, as provided in the affidavit. It was agreed that the third legatee, Bob, was not getting any jewelry. Bob would be given "more money because of the value of the jewelry." Counsel stated: "We agree that Savoie Jewels shall appraise the seven items that on our list that we have agreed to and then he shall inform us as to how to evaluate the rest of the jewelry whether by weight or otherwise. We will listen to his sound advise [sic]."

The relator's counsel requested a break in the proceedings to make sure "we are on the exact same page." The trial judge responded: "It will benefit everybody to make sure everybody is on the same page." When the proceedings resumed, counsel for the relator stated the parties agreed that "the affidavit jewelry will go to Lynn and Joy as listed." Counsel went on to state: "There is jewelry that is listed on the detailed descriptive list that is not on the affidavit. The heirs shall pick those items in a round robin fashion." For jewelry not listed on the descriptive list or in the affidavit, it was agreed "whoever has those items of jewelry they get to keep."

A discussion was held off the record. Counsel for the relator stated, "Jewelry is done," and then proceeded to discuss other succession items.

Later in the hearing, the trial judge stated he was "just trying to make sure this is comprehensive." Counsel for the relator replied, "We have talked about the three assets. The three that we came here for today that's been put on the record." He then listed the other items not relevant to this writ application. Opposing counsel then replied: "I think you did cover everything…I think counsel has covered everything."

The trial judge then swore the relator, Mr. Plaisance, and Bob under oath and asked if they heard the provisions of the consent judgment read into the record. The judge then specifically addressed the relator:

> THE COURT:
> Ma'am, Ms. Naquin, you've heard the provisions as read into the record here?
>
> MS. NAQUIN:
> Yes, sir.
>
> THE COURT:
> And you understand them?
>
> MS. NAQUIN:
> Yes, sir.
>
> THE COURT:
> You are in agreement with them?
>
> MS. NAQUIN:
> Yes.
>
> THE COURT:
> You understand that once they are reduced to writing I will sign it and then these provisions will become a judgement of the court?
>
> MS. NAQUIN:
> Yes, sir.

After that, the parties could not agree on the wording of a written judgment. On July 24, 2024, the trial judge issued a written judgment stating in pertinent part:

Regarding the issues of the three following items which were made subject of the December 12, 2023 hearing:

a.) the Capital One checking account no. 60042265, with a non-interest bearing balance of $41,744.62, designated as a POD account according to a disputed POD beneficiary form dated February 8, 2020 (of note, these funds were used by the Succession to partially pay Bruce Spizer's attorney fees); b.) the Schwab Transfer of $50,000 shown on a Schwab Check and Journal Request form as a transfer from Joyce Hymel Gettys to Joyce Naquin dated September 6, 2019, with the $50,000 transfer funds currently in the possession of Joy Naquin; and c.) a Cartier watch, well known to all parties, and listed on the DDL of February 14, 2022 with a value of $15,858, and in the possession of Joy Naquin; they are resolved by Joy Naquin receiving fifty percent of the value of those three items, $53,801.31 and the Succession receiving fifty percent of the value of those three items, $53,801.31 with Joy Naquin keeping the Cartier watch in her possession and receiving ownership of the watch in the Succession Judgment of Possession to be rendered herein as a credit or charge of $15,858 toward her residuary bequest.

The relator filed a motion for a new trial on August 1, 2024, claiming that the written judgment did not reflect the transcript. She argues that the transcript does not state the watch's value, which was appraised at $5,800 after the hearing. On October 16, 2024, the trial court denied the relator's motion for a new trial. This timely writ application followed.

**LAW AND DISCUSSION**

A consent judgment is a bilateral contract in which parties adjust their differences by mutual consent, thereby ending a lawsuit with each party balancing the hope of gain against the fear of loss. La. C.C. art. 3071; *Peeler v. Dural*, 06-936 (La. App. 5 Cir. 4/11/07), 958 So.2d 31, 35. A consent judgment has attributes that are both contracts and judicial decrees. *Peeler, supra*. This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. *Matchmaker Int'l of New Orleans, Inc. v. Osborne*, 94-920 (La. App. 5 Cir. 3/15/95), 653 So.2d 686, 689. The agreement recited in open court confers upon each party the right to judicially

enforce its performance, although its substance may be written in a more convenient form. *Id.*

When parties voluntarily negotiate and sign a consent judgment, Louisiana law recognizes that as the law between the parties, and the trial court's enforcement of a consent judgment must follow the parties' intent based upon the explicit words of the contract. *Lawrence v. Ashton Plantation Home Owners Ass'n, Inc.*, 22-122 (La. App. 5 Cir. 6/28/22), 344 So.3d 232, 240, *writ denied*, 22-1157 (La. 11/1/22), 349 So.3d 5, *reconsideration not considered*, 22-1157 (La. 1/18/23), 353 So.3d 129.

A consent judgment is "a bilateral contract wherein parties adjust their differences by mutual consent." *Burrell v. UMC*, 19-1095, 19-0423 (La. App. 4 Cir. 6/10/20), 302 So.3d 93, 96. Through concessions the parties make, they enter into a contract to "settle a dispute or an uncertainty concerning an obligation." La. C.C. art. 3071. The consent judgment that results from the mutual consent of the parties "is and should be accorded sanctity under the law." *Plaquemines Parish Gov't v. Getty Oil Co.*, 95-2452 (La. 5/21/96), 673 So.2d 1002, 1006.

In this writ application, the relator contends that the trial court erred in placing a value of $15,838 on the Cartier watch. She argues that the transcript of the settlement contains no value for the Cartier watch, nor any indication that the co-executors believed the value had to be fixed then. She contends that the trial court "resolved a matter outside the scope of the parties' compromise and relied upon information outside the four corners of the settlement agreement."

We disagree. On February 14, 2022, the co-executors filed a detailed descriptive list into the succession proceedings. The Cartier watch was listed as a "disputed item of jewelry" valued at $15,838. The funds in checking account number 60042265 and the $50,000 Schwab transfer were listed as "disputed accounts and transfers." The relator signed the descriptive list in her capacity as

co-executor. At the time the relator entered into the consent judgment, she had disputed whether the Cartier watch should be listed as property of the estate; she knew the watch's value as stated in the descriptive list. If the relator felt that the value of the Cartier watch was in dispute, she should have raised it at the hearing on the consent judgment. She failed to do so and now is precluded from arguing that the watch's value is not as stated on the descriptive list.

The relator further argues that the trial court should have used the watch's appraised value of $5,800 as stated on the July 2, 2024 appraisal. This argument is without merit. The relator had sworn under oath that she heard and agreed with the terms of the consent judgment read into the record at the December 12, 2023 hearing.

The relator further argues that the trial court erred in reducing her residual legacy by the total value of the watch.

The trial court's interpretation of an alleged compromise agreement is subject to manifest error/clearly wrong review. *Hancock Bank of Louisiana v. Holmes*, 09-1094 (La. App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134-35. This is because the existence or validity of a compromise depends on a finding of the parties' intent, an inherently factual finding. *Id*. We review the trial court's findings of fact on appeal under the manifest error standard. *Martin v. Trushyna*, 19-79 (La. App. 5 Cir. 11/13/19), 283 So.3d 1083, 1086. Under this standard, to reverse a fact-finder's determination, the appellate court must find from the record that a reasonable factual basis for the trial court's finding does not exist and that the record establishes that the finding is clearly wrong. *Rabalais v. Nash*, 06-999 (La. 3/9/07), 952 So.2d 653, 657.

A close reading of the written judgment indicates that the trial court added $41,744.62 (the amount in checking account number 60042265), the $50,000 Schwab transfer, and the $15,838 watch, then apportioned 50% of the value of

these items, which is $53,801.31 to the relator and 50% to the estate. This reflects the settlement read into the record exactly. The written judgment states that the relator can retain possession of the watch as agreed to in the verbal consent judgment.

The relator argues that the trial court erred in putting a credit or a charge of $15,838 towards her residual legacy. A reading of the transcript of the verbal consent judgment indicates that Bob, the legatee who was not receiving any jewelry, was to get an equal cash amount for the jewelry listed on the descriptive list and in the affidavit of the decedent. In the judgment, the relator was given ½ the watch's value when she was awarded $53,801.31. In the judgment, the estate, of which the decedent gets 50%, was awarded ½ the watch's value. Thus, the relator will recoup 25% of the watch's value when the estate is fully divided. The result is the relator's residuary legacy will be reduced by 25% of the value of the Cartier watch.

The moving party bears the burden of proving adequate grounds for a new trial. *Dragon v. Schultz*, 97-664 (La. App. 5 Cir. 1/14/98), 707 So.2d 1274, 1276. When a claim is made that a new trial is warranted due to newly discovered evidence, there must be a clear showing that the evidence was discovered after the proceedings' conclusion and that every reasonable and diligent effort was made to procure it before the proceedings. *Burns v. Sedgwick Claims Mgmt. Servs., Inc.*, 14-421 (La. App. 5 Cir. 11/25/14), 165 So.3d 147, 155. A trial court has great discretion in granting a new trial, and its decision denying a motion for a new trial will not be disturbed "unless there has been a clear abuse of discretion." *BFH v. First Nat. Bank USA*, 13-904 (La. App. 5 Cir. 5/14/14), 147 So.3d 730.

In this case, if the relator believed that the value of the Cartier watch was in dispute, rather than the dispute being whether the watch should be included as property of the estate, she could have had the watch appraised. The writ

application does not contain evidence that the relator made any effort to dispute or ascertain the value of the Cartier watch different than that listed on the descriptive list before entering into the December 12, 2023 consent judgment.  Our review of this writ application indicates that the trial court did not abuse its discretion in denying the relator's motion for a new trial.

## CONCLUSION

For the preceding reasons, we deny this writ application.

Gretna, Louisiana, this 18th day of December, 2024.

**JJM**
**FHW**
**JGG**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN
TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS
DAY **12/18/2024** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF
THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY
COUNSEL, AS LISTED BELOW:

**24-C-570**

CURTIS B. PURSELL
CLERK OF COURT

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable Stephen D. Enright, Jr. (DISTRICT JUDGE)
Perry R. Staub, Jr. (Relator)                    Charles G. Justice, III (Respondent)
Donald J. Miester, Jr. (Relator)

### MAILED

Charlton B. Ogden, III (Relator)          Christopher M. Gaffney (Respondent)
Attorney at Law                           Michael G. Gaffney (Respondent)
1100 Poydras Street                       Attorney at Law
Suite 2100                                3015 19th Street
New Orleans, LA 70163                     Metairie, LA 70002